BROWN et al. v. CRANBERRY IRON & COAL CO.

(Circuit Court, W. D. North Carolina. February 7, 1894.)

DEEDS—CONSTRUCTION—MINERAL RIGHTS.

　A deed which conveys "the following tract of land, situate," etc., "that is, the one-half of the mineral interest in the said land," (described by metes and bounds,) to have and to hold "the one half of the mines and minerals" therein, must be *held* to convey the grantor's entire mineral interest, even if considered upon its face alone; but especially so in the light of the facts, known to both parties, that the grantees had already purchased the fee of the lands for the purpose of making a sale to a company having sufficient capital to develop its mineral deposits, that the sale had fallen through because of the grantor's claim to an interest in the mineral rights, and that the grantees desired to purchase the same in order to perfect, and make salable, their title.

At Law. Action brought by John E. Brown against the Cranberry Iron & Coal Company, under the direction of the court of equity, to establish his title, as tenant in comomn, to the land of which he prayed for partition; the defendant, in its answer, having asserted "sole seisin." 40 Fed. 849.

Long before bringing the suit, the plaintiff had made the following deed to the parties under whom defendants claim:

This indenture, made and entered into this 7th day of June, A. D. 1867, between John E. Brown, by his agents and attorneys in fact, Z. B. Vance and William J. Brown, of the first part, and Thomas J. Sumner and Robert

F. Hoke, of the second part, witnesseth that the said John E. Brown, for and in consideration of the sum of twenty-two thousand dollars in hand paid, and secured to be paid, before the execution of this deed, the receipt whereof is hereby acknowledged, the said John E. Brown hath bargained and sold, and by these presents doth bargain, sell, release, relinquish, and confirm, unto the said Thomas J. Sumner and Robert F. Hoke, the following tract of land, situate and being in the county of Mitchell, in the state of North Carolina; that is, the one-half of the mineral interest in the said land: Beginning on a hickory and sugar tree marked "W. F. P.," west of Cranberry creek, in the gap of the humpback of the Yellow mountain, and runs west 123 poles, crossing a branch at 8 poles, and another at 88 poles, to a Spanish oak and maple tree; then south 74 poles, crossing a branch at 20 poles, to a large Spanish oak on the top of a ridge; the same course, 120 poles, crossing a branch at 83 poles, to a small chestnut on the east of the humpback of the said Yellow mountain; then east 40 poles, to a large sugar tree; then south 114 poles, crossing a branch at 8 poles, and Roaring creek at 108 poles, to a beech marked "W. F. P.;" then east 130 poles, to a buckeye and sugar tree; then south 70 poles, to a poplar in a flat; then west 30 poles, to a buckeye; then south 120 poles, crossing a branch at 100 poles, and another at 110, to a maple in a flat; then east 574 poles, crossing Cranberry creek, 9 poles, to a stake on the West fork, east of Cranberry creek; then north 949 poles, to a stake; then west, crossing said creek, 489 poles, to a black oak, white oak, and chestnut; same course, 92 poles, to a stake; then south to the beginning,—containing some three thousand acres, and being the same lands condemned for the Cranberry Iron Works, known as the "Bounty Lands," and the same conveyed by Thomas M. Pettit to William Dugger, and the same purchased by the said Jno. E. Brown, under the decree of the court of equity for Buncombe county, as the property of Thomas M. Pettit and the heirs of Wm. Cathcart. To have and to hold, the one-half of the mines and minerals and mineral interest in said land, and the appurtenances thereunto belonging. And the said John E. Brown doth warrant and defend the title to the one-half of the mines, minerals, ore bank, and mineral interest within the boundaries of the said lands, except the five tracts granted to Waightstill Avery, and one to Reuben White, within said grant of prior date to the grant to William Cathcart, to the said Thomas J. Sumner and Robert F. Hoke, and their heirs, forever, against the lawful claims of all and every person whatsoever. In testimony whereof, the said John E. Brown, by his agents and attorneys, Z. B. Vance and Wm. J. Brown, has hereunto set his hand and seal the day and date above written.

[Signed]

For Jno. E. Brown.    [Seal.]
W. J. Brown, Agt.    [Seal.]
Zebulon B. Vance, Agt. [Seal.]

Witness:
Geo. W. Swepson,
B. S. Gaither.

Chas. A. Moore, P. J. Sinclair, M. E. Carter, and P. A. Cummings, for plaintiff.

R. H. Battle, Geo. N. Folk, W. H. Malone, and J. W. Bowman, for defendant.

DICK, District Judge. On the trial of this case the defendant offered in evidence a deed executed by the plaintiff, and insisted that he was estopped thereby from asserting title to any minerals embraced within the boundaries mentioned in the deed. This question of law was fully discussed by counsel in the argument, and was reserved by the court for subsequent determination. An issue was then submitted to the jury, as to whether the plaintiff was estopped by matters of fact occurring previous to and contemporary with the negotiation of sale, and the execution of the deed, as disclosed in the

pleadings and evidence; and that issue was found in favor of the defendant.

As the counsel of plaintiff presented written requests for instructions, and filed a bill of exceptions to the charge of the court, with the view of carrying the case to the circuit court of appeals by a writ of error, I think the record of the trial will not be complete, without a determination of the question of law reserved by the court. The deed of the plaintiff, made to the grantees under whom the defendant claims, was properly executed by the fully-authorized agents and attorneys in fact of the grantor; was founded on a valuable and adequate consideration; was duly registered, and embraced within its description of boundary the entire tract of land in which the plaintiff claimed an undeveloped mineral interest; the fee in the soil then being in the grantees by previous purchase from other parties, who had title and a right to convey. In this case, it is unnecessary to consider whether the title of the grantor was legal or equitable, or the right to the subject-matter was corporeal or incorporeal in its nature, or what is the form and operation of the conveyance, as the common-law rule is well settled in this state, that, if a deed cannot operate fully in the way intended by the parties, the court will endeavor to construe it so that it shall operate in some other manner, to effect the objects and purposes intended, and in accordance with the good faith and the manifest merits of the transaction.

The plaintiff insisted that at the time of the execution of the deed he had a mineral interest in said lands, as tenant in common with the grantees and with other parties, amounting to more than an undivided half, and that he conveyed only an undivided half of such mineral interest under the express description of the subject-matter set forth in his deed, and that he is now entitled to the part interest not conveyed. The interest claimed by the plaintiff was not an undivided right, as tenant in common, to the minerals in all the lands within the boundaries of the deed. It was attached to some parts of the land which he had previously sold, reserving some or all the minerals, and the location, extent, and value of his interest was unascertained. There were other persons who owned tracts of land and minerals within said large boundaries. The claim of the plaintiff, as to quantity and value, was indefinite, and not capable of being accurately fixed; and the description of "the one-half of the mineral interest in said lands" probably largely exceeded his interest, as the most valuable minerals had been developed, and then belonged to the grantees.

The question of construction presented for determination is whether such description of the subject-matter of the deed was intended to convey all the mineral interest then owned by the grantor, or only an undivided half of the mineral interest in said lands.

The counsel of defendant insisted that the law presumes that a legal instrument is grammatically written, and it should be construed according to the rules of grammar, to give effect to the intelligible meaning and purpose of the parties. The deed purports to transfer or release the interest of the grantor in the entire tract

of land described by metes and bounds, and then the definite article
is employed to make cumulative and more particular description,
and shows that the grantor only claimed "the one-half of the mineral
interest in said lands" and intended to convey or release his entire
interest to his cotenants in possession.    They further insisted that
the legal force and effect of the deed was to convey such entire in-
terest, as there was no express reservation or exception distinctly
and definitely excluding any right or interest from the operation of
the deed; that where a deed is executed by one party only, and it
contains an indefinite or ambiguous clause, susceptible of two
plausible but inconsistent significations, the one is to be adopted
which is most strongly against the grantor and in favor of the
grantee, and that this construction is more especially required
where the intention and objects of the grantee were well known
and understood by the grantor, and were induced by his conduct and
declarations previous to and contemporary with the transaction;
that where one construction of a clause in a deed will work in-
justice, and the other is consistent with the right of the case, that
one should be adopted which standeth with the right; that the in-
tention of parties to a contract is the contract, and should prevail,
although such intention may not come strictly within the letter of
the instrument employed; that the state of things and the sur-
rounding circumstances in which an agreement is made should be
looked at as a means of throwing light upon its meaning, especially
for the purpose of ascertaining the true subject-matter; that a deed
should be construed with reference to the subject-matter.    When
the property conveyed is capable of definite ascertainment and de-
scription, an accurate description may well be required.    But,
where the nature and condition of the property is such that a
definite description of its extent and value cannot be ascertained,
—an indefinite description can, by extrinsic evidence, be fitted to
the subject-matter by showing the intention of the parties at the
time the deed was executed.    These legal propositions—founded
in reason, justice, and common honesty—seem to be well sustained
by authorities, and they appear to be in accordance with the in-
tention of the parties, manifested on the face of the deed, when
considered in the light of the previous and contemporary negotia-
tion and transaction of the parties.    2 Bl. Comm. 379; 1 Shep.
Touch. 86; Noonan v. Bradley, 9 Wall. 394--407; Steinbach v.
Stewart, 11 Wall. 566--576; Canal Co. v. Hill, 15 Wall. 94; Bank v.
Kennedy, 17 Wall. 19--28; Chicago, etc., Ry. Co. v. Denver, etc., R.
Co., 143 U. S. 596, 12 Sup. Ct. 479; Topliff v. Topliff, 122 U. S. 121,
7 Sup. Ct. 1057; District of Columbia v. Gallaher, 124 U. S. 505, 8
Sup. Ct. 585; Rowland v. Rowland, 93 N. C. 214; Lowdermilk v.
Bostick, 98 N. C. 299, 3 S. E. 844.

In the construction of the language of a deed or other contract,
the fundamental rule is that the intention of the parties must be
supported, as to the extent of its operation, if not contrary to the
rules of law.    This intention must, if possible, be ascertained from
the deed itself, by considering all its parts.    The words in a deed

cannot, as a general rule, be added to, explained, or contradicted by extrinsic evidence, but where any part is indefinite or ambiguous, or cannot be fully understood as to the intention of the instrument, it may be construed in the light of surrounding circumstances, in which may be considered the position and relation of the respective parties, the objects of the conveyance, and the subject-matter at and subsequent to the transaction. A court may avail itself of the same light which the parties possessed at the time the deed was executed, and may consider previous and contemporary transactions and facts to ascertain the subject-matter, and the sense in which the respective parties may have employed and understood the particular expressions in the deed. Merriam v. U. S., 107 U. S. 437, 2 Sup. Ct. 536; Prentice v. Forwarding Co., 58 Fed. 437.

The evidence shows that the grantees had purchased the fee in said lands for the purpose of selling to some company which had sufficient capital to develop and utilize the minerals; that an effort had been made by them to sell, and the sale was not effected on account of the outstanding claims of the grantor and others to mineral interests in said lands; and that these facts were well known to the intelligent, faithful, and highly honorable attorneys in fact of the grantor at the time of the execution of the deed. The grantor claimed to be a tenant in common in the minerals with the grantees, who had purchased a large part of the fee in the soil from persons who derived title from the grantor. The parties, as tenants in common, had in some respects a relation of trust and confidence to each other, and the grantees had a right to expect a full disclosure as to the mineral interest claimed by the grantor, when he knew the object they had in view in making the purchase. Rothwell v. Dewees, 2 Black, 613.

The evidence shows that the grantees had employed able counsel, who had examined the books in the office of the register of deeds, and could not ascertain the nature and extent of the title of the grantor to the minerals claimed, and who had, after careful investigation, expressed the opinion that no evidence of title was shown by the registry. The mineral interest claimed by the grantor was undeveloped, and its value was not capable of being ascertained without careful exploration and considerable expenditure. The large amount of money received by the attorneys in fact of the grantor, as a consideration for the deed, tends strongly to show that they intended to convey, and that the grantees expected to receive, all of the mineral interest of the grantor. The grantor claimed to be the owner of a particular estate in the premises, which estate his deed purported to convey by certain metes and bounds, and without any express reservation or exception. Such affirmation of a particular estate must necessarily have influenced the grantees in making purchase, and induced them to believe that they were acquiring all the estate in the lands owned by the grantor. In such cases the rules of law are well settled, and are founded upon the highest principles of morality, justice, and common sense; and they tend to prevent falsehood and fraud, and to secure good faith.

and fair dealing, by imposing an estoppel, where, in conscience and honesty, a grantor should not be allowed to claim to the contrary. Van Rensselaer v. Kearney, 11 How. 297.

The attorneys in fact of the grantor were highly honorable men, were faithful agents, and were familiar with the rights of their principal. From the nature of the transaction, and judging their conduct by the ordinary principles of common honesty and fair dealing, which might well be expected from men of such high character, we cannot suppose that they intended to reserve from the operation of the deed an undeveloped mineral interest, which, without any expense on the part of the grantor, would be greatly enhanced in value by the subsequent expenditures of the company to which the grantees might sell the property. We are sure, from the evidence as to the large amount of consideration money paid for the property, as to the objects they had in view, and as to the reliance which they placed upon the representations of the reliable agents of the grantor, that the grantees expected to be invested with the entire interest of the grantor. The location, extent, and value of such interest could only be ascertained by expensive exploration and development. Mineral deposits in land undeveloped, held by tenants in common, are not the subject of actual partition in specie, either at law or in equity. The only methods which the grantees could have adopted, to acquire entire title in the minerals in their lands, were to purchase from their cotenants, or have such interest sold under a decree of a court of equity. The grantees desired to develop such property, and have a perfect title, so that they might realize all the benefits of their labor, skill, and expenditure. The habendum in the deed in no way restricts or qualifies the premises, but employs the same description of the subject-matter conveyed. We observe that, in the covenant of warranty, exception was made as to six tracts of land within the boundaries, which had been previously acquired by Avery and White; and we reasonably infer that if the grantor still owned an undisposed-of interest in the minerals, which was not intended to be conveyed, the attorneys in fact would have disclosed such interest by an exception in the deed. They well knew that the material inducement to the contract on the part of the grantees was to obtain a complete transfer of the entire interest of the grantor in order that they might accomplish their purpose which had been previously defeated by the outstanding interest of the grantor. The evidence shows conclusively that the attorneys in fact acted in good faith, and intended to convey, and believed that they did convey, all the mineral interest of their principal. We are strongly inclined to the opinion that the present claim of the plaintiff was an afterthought, not suggested by his agents, but induced by a recent examination of his old deeds, and a supposed discovery that some of his many reserved mineral interests were not embraced within the description of the subject-matter in his deed to the grantees. We are confirmed in this opinion by the fact that he asserted no claim to an unconveyed mineral interest for nearly 20 years after the execution of the deed, although he had knowledge that

the defendant company had made large expenditures in developing the minerals, and were in possession, claiming to hold the premises in severalty.

We have thus far chiefly considered the force and effect of the deed in the light afforded by extrinsic evidence, as the most important object in the construction of all contracts is to ascertain the intention of the parties. But, independent of such evidence, we are of opinion that the deed, on its face, shows that the attorneys in fact of the grantor intended to convey, and did convey, all the grantor's interest in the land. In the first clause of the premises descriptive of the subject-matter, the grantor conveyed all the lands within certain boundaries. This grant conveyed all the interest of the grantor, of every kind and description, as there was no reservation or exception of the minerals, which would pass with the land without such exception. The second cumulative clause in the premises, more particularly describing the subject-matter, is subordinate, and, if repugnant to the first, must be rejected in construction. It cannot be construed as implying an intention to except some other mineral interest from the operation of the deed. "An exception is ever a part of the thing granted," and must be made in apt words, of certain description, so as to keep it from passing by the grant. Waugh v. Richardson, 8 Ired. 470. The two clauses in the premises are not repugnant, and can be easily reconciled by construing the second as embracing the entire mineral interest claimed by grantor in the lands mentioned in the first clause. There is a well-settled rule of legal construction that "the express mention of one thing implies the exclusion of another." 2 Minor, Inst. 961. This rule of law is also applicable in construing the covenant of warranty in this deed as an assurance that the grantees shall quietly hold and enjoy the lands granted against "the lawful claim of all and every person whatsoever."

After full consideration of the transaction in the light of surrounding circumstances, and without placing any strained construction upon the language, we think the deed, on its face, clearly shows that the attorneys in fact of the grantor intended to convey, and the grantees expected to be invested with, all the mineral interest of the grantor, and that the negotiation of sale had proceeded upon that understanding between the parties, and the legal effect and operation of the deed was to convey all the mineral interest of the grantor within the metes and bounds mentioned, and now estops him from claiming that all his interest was not thus conveyed.