## BROWN et al. v. CRANBERRY IRON & COAL CO.

### (Circuit Court of Appeals, Fourth Circuit. February 4, 1896)

### No. 137.

**1. EQUITY JURISDICTION AND PRACTICE—PARTITION SUITS—ACTION AT LAW.**

Where the answer to a bill for partition of real estate entirely denies the title set up by complainant, the proper course is, not to send an issue out of chancery to try the title, but to stay the suit, and send complainant to a court of law for the purpose of establishing his title. In such case the equity court assumes no jurisdiction over the action at law, and, if either party be dissatisfied with the result thereof, he should move in that action for a new trial; and the proper method of reviewing such judgment is by writ of error.

**2. PRINCIPAL AND AGENT—PURCHASE OF LANDS—AGENT'S KNOWLEDGE.**

One purchasing lands through an agent is affected by the previously acquired knowledge of the agent in respect to matters affecting the title, if the agent had that knowledge in his mind when he made the purchase. Where it is sought, therefore, to bind the principal by his agent's knowledge, it is competent to adduce evidence tending to show previous knowledge by the agent, but the party is bound to follow this up by evidence tending to show that the agent had it in mind at the time.

**3. SAME—DECLARATIONS OF AGENT AFTER THE FACT.**

Declarations by an attorney in fact that a certain conveyance made by him in behalf of his principal conveyed the entire mineral interest in the lands described in the deeds, and that the grantees had a good title to all such minerals, do not estop his principal. This is especially true where such declaration or representation relates merely to the construction of the deeds.

**4. APPEAL—HARMLESS ERROR—ADMISSION OF IMPROPER TESTIMONY.**

In order to avoid a reversal for admission of incompetent testimony, on the ground that the same fact was afterwards proved by proper testimony, it must be clear beyond all doubt that the erroneous admission of testimony did not and could not prejudice the rights of the excepting party.

**5. ESTOPPEL BY DEED—MISTAKE.**

Grantors who sign a deed as prepared and drawn by the agent of the grantees are not estopped from asserting an interest which was not conveyed by the deed, although the grantees supposed that they were obtaining the entire interest, and the failure of the deed to convey it was due to the mistake of their attorney.

In Error to the Circuit Court of the United States for the Western District of North Carolina.

This was an action at law by W. Vance Brown and others, children and heirs at law of J. Evans Brown, deceased, and William B. Carter, against the Cranberry Iron & Coal Company, to establish title to an undivided half interest in certain mines and mineral interests, as tenants in common with the defendant. The action was brought pursuant to leave given in a suit in equity previously brought by the plaintiffs for partition. In the action at law, one issue only was tried to the jury, and a verdict thereon was given in favor of defendant, and judgment was entered accordingly. The other issue

was reserved and decided by the court also in favor of defendant (59 Fed. 434), but no judgment was entered on that issue. A writ of error was sued out by the plaintiff to review the judgment entered on the verdict of the jury, but the same was dismissed by this court on the ground that such judgment was not final. 13 C. C. A. 66, 65 Fed. 636. Further proceedings were afterwards had in the court below, resulting in a final judgment for defendant, from which the plaintiffs have sued out this writ of error.

Chas. A. Moore (of Moore & Moore), for plaintiffs in error.
R. H. Battle (of Battle & Mordecai), for defendant in error.

Before GOFF and SIMONTON, Circuit Judges, and BRAWLEY, District Judge.

SIMONTON, Circuit Judge. This cause comes up by writ of error to the circuit court of the United States for the Western district of North Carolina.

On the 16th August, 1887, J. Evans Brown a citizen of New Zealand, and William B. Carter, a citizen of Tennessee, filed their bill of complaint in the circuit court of the United States for the said district, against the Cranberry Iron & Coal Company, a body corporate under the laws of the state of North Carolina. The bill alleged that the complainants were tenants in common with the defendant in all the mines and minerals and mineral interests in certain lands in North Carolina, described in the bill, wherein they say the complainants are each entitled to an undivided fourth part, and the defendant to an undivided half. The answer of the defendant denied any title in the complainants in the realty sought to be partitioned, and averred that defendant is sole owner in fee simple absolute thereof. It also set up certain matters in pais as constituting an estoppel against the plaintiffs from setting up any title to said mines and minerals and mineral interests. Replication having been filed, the cause came to a hearing, whereupon the court entered its order in these words:

"This cause coming on to be heard at the present term, before the Honorable R. P. Dick, judge, present and presiding, and it appearing to the court from the pleadings that the title of the plaintiffs to the property sued for in the bill, and every part thereof, is denied in the answer, the court doth thereupon order the plaintiffs' bill to be retained for twelve months, with liberty to the plaintiffs in meantime to proceed at law touching the matters in question in this cause; but, in case the plaintiffs shall not proceed at law and to proceed to trial within the time aforesaid, the plaintiffs' bill is from thenceforth to stand dismissed out of this court, with costs to be taxed by the clerk, unless further time is given, upon cause shown, by the court; but, in case the plaintiffs shall proceed at law and to trial as aforesaid, the court does reserve the further consideration of the costs of this suit and of all further directions until after such trial shall be had; and in either case any of the parties are to be at liberty to apply to the court as they shall be advised. And it is further ordered that this decree be without prejudice to the rights of the parties to take further evidence on the matters and equities involved in the cause upon notice duly given. And to the end the merits may come in question upon such trial, and it is further ordered that it be admitted on both sides, on such trial, that there has been an ouster on the part of the defendant against the plaintiffs. It is further ordered by consent of parties that in any action at

law the plaintiffs may institute to establish the title to the property sued for in this bill, that the evidence and depositions now on file, and which were taken in this cause before R. M. Douglass, examiner in the same, or which may hereafter be taken and filed herein, may be used by either party on the trial of such action, without prejudice 'to the right of the parties litigant to use such evidence, also on the further hearing of this suit."

This course pursued by the learned judge who heard this case is in strict accord with the law and practice of courts of chancery. "When, on a bill for partition, where partition is a subject of equity jurisdiction, the legal title is disputed and doubtful, the course is to send the plaintiff to a court of law to have his title first established." Cox v. Smith, 4 Johns. Ch. 271; Phelps v. Green, 3 Johns. Ch. 302. Equity has no jurisdiction to try the title to lands. Manners v. Manners, 2 N. J. Eq. 384. Obert v. Obert, 10 N. J. Eq. 98. An action at law was ordered, and not an issue out of chancery. This is in accord with the practice in North Carolina. "An issue is sent from a court of equity to be tried before a court of law to aid the court of equity in the ascertainment of facts. An action is ordered to be tried in a court of law when the equity is based on a strictly legal right." Fisher v. Carroll, 1 Jones (N. C.) 27.

The complainants availed themselves of the leave granted to them by the court, and, within the period fixed, brought their action against the defendant, the Cranberry Iron & Coal Company, on the law side of the circuit court of the United States for that district. The action was begun by summons as prescribed in the Code of North Carolina, followed by complaint. It is in the form used to try the title to lands, sets up the claim of title in two undivided fourths of these minerals, mineral lands, and mineral interests, avers that defendants are unlawfully in exclusive possession, and prays to be let into possession, and for damages. The complaint and summons having been duly served on defendant, it answered, denying the claim of title set up by plaintiffs, setting up that defendant owns, and is in absolute and entire control of, said realty, and was so at the commencement of this action and for a long time prior thereto. Then it sets up certain matters of estoppel in pais against the claim of plaintiffs; also, its notorious, open, adverse, and exclusive possession, under deeds therefor, of this realty for more than 7 years next before the commencement of this action, and for more than 20 years prior to the same, pleading such occupation and the statute of limitations in bar of the claim of plaintiffs. The cause came on for trial before the judge and a jury, and it seems that every other issue in the pleadings was abandoned but one, viz.: Is the plaintiff estopped from claiming any title by deed, conduct, acts, or otherwise? So much of the issue as presented matters of fact was submitted to the jury in the form of a question: "Are the plaintiffs estopped by their acts, declarations, or otherwise from claiming any interest in the mines and minerals in the land described in the complaint? To this question the jury, under the charge of the judge, answered, "Yes." So much of the issue as involved the questions of law (the construction of deeds) his honor reserved for himself, and decided that they also estopped the plaintiffs from claiming title. 59 Fed. 434. Numerous

exceptions were taken during the trial and to the charge by the court on the part of the plaintiffs, all of which were duly formulated in the bill of exceptions, and are in the assignments of error.

This is an action at law, brought by plaintiffs as a condition precedent to proceedings in equity. Although it was brought by them because of the order of the court of equity, that order was not mandatory. It only prescribed that, if the action was not brought within a time limited, the bill would be dismissed. In cases of this character the court of chancery assumes no jurisdiction over the action. If either party be dissatisfied with the result, a new trial must be moved for in a court of law. "In directing the action at law," says Daniell, Ch. Prac. (3d Am. Ed.) 1119, "the court always orders it to be brought in such a form that the verdict should be regarded as conclusive."

Mr. Adams, in his work on Equity (page 378), says:

"In this class of cases there is not a mere point of law or fact incidentally in dispute as to which the court for its own satisfaction seeks the aid of another tribunal, but there is a general question of right, determinable as such by the ordinary courts, and requiring a decision according to the course of these courts both of disputed facts and the law applicable thereto."

In an action at law brought under the direction and by leave of the court, the court of equity does not assume to interfere with the course of pleadings in the court of law, and all errors made at the trial must be corrected in that court or by writ of error to the appellate court having jurisdiction over it. Watt v. Starke, 101 U. S. 250; Smith, Ch. Prac. 90; Adams, Eq. (7th Ed.) 378; Bootle v. Blundell, 19 Ves. 500.

The exceptions and assignments of error have been properly brought to this court by the writ of error. Before discussing any of the assignments of error, a brief statement of facts is necessary.

Hoke, Sumner, and Hutchinson were tenants in common of a tract of land in North Carolina. During negotiations for its sale in New York, they were informed that J. Evans Brown, one of these plaintiffs, and the estate of Avery, had a claim on the minerals in this land. They opened negotiations with Avery's executor, and contracted to purchase his interest, and then they dealt with W. J. Brown, the father of the plaintiff J. Evans Brown, and the late Z. B. Vance, who were attorneys in fact of J. Evans Brown, who lived in New Zealand. The purpose of Hoke and his associates was to remove all cloud on the title of their land. This was communicated to Avery and to the attorneys in fact of the plaintiff Brown. After the negotiations with Brown and Vance were completed, and the sale agreed upon, and the price fixed, the papers were all placed in the hands of Col. Gaither, the attorney for Hoke, and his associates, who had represented them in the negotiations, and who had examined into the title of the property purchased, and he prepared the conveyance. The important parts of this conveyance are these: John E. Brown, for the consideration of $22,000, "doth bargain, sell, release, and confirm unto Thomas J. Sumner and Robert F. Hoke the following tract of land, situate and being in the county of Mitchell, in the state of North Carolina, that is, one-half of the mineral interest in

the said lands." Then follows a description by metes and bounds. "To have and to hold the one-half of the mines and minerals and mineral interests in said lands and appurtenances thereunto belonging." "And the said John E. Brown doth warrant and defend the title to the one-half of the mines, minerals on bank, and mineral interests to said Sumner and Hoke and their heirs, forever." The defendant holds under mesne conveyances from these grantees. The realty, the subject-matter of this arrangement, was this: The state of North Carolina had granted to one William Cathcart two contiguous tracts of land, containing together 158,200 acres. One William J. Brown claimed these lands, and Isaac T. Avery also claimed them. J. Evans Brown became the owner of all the interest of William J. Brown; and in 1853 he and Avery entered into a compromise whereby he released to Avery 40,000 acres of these tracts, and Avery released to him all the rest. The dividing line between him and Avery was a road running through the tract, Avery keeping all the land on the west side of this road, and Brown all the lands on the east side. The Cranberry iron ore bank was on the west side, on the lands of Avery. As a part of the compromise, Avery conveyed to Brown one-half of the Cranberry iron ore bank, so that Avery and Brown shall have a like and equal interest in said iron ore bank. These deeds were on record. The minerals conveyed to Hoke and his associates lay in lands on both sides of this road. The suit concerns the title in one-half the minerals on the east side of the road (that released to Brown).

The assignments of error are numerous, and are directed as well to the trial and determination of the issue of fact by the jury as to the ruling on the issue of law by his honor, the trial judge. The conclusion reached by us renders unnecessary the discussion of all the issues assigned. Two of them, which relate to the trial of the issue of fact, and those relating to the decision of the legal issue, will be noticed. There are two assignments of error which deserve special attention, the fifth and the first. They will be taken up in this order.

The fifth assignment of error is that the court below excluded the testimony offered by plaintiffs to prove (by his witness A. C. Avery) that Col. Gaither had for many years been the attorney for the plaintiff prior to June 7, 1867, and that he knew of the compromise between Isaac T. Avery and W. J. Brown, and represented the plaintiffs in the compromise transaction by which the compromise line was located. Under this compromise, Brown obtained all the mines, minerals, and mineral rights on the east side of the compromise line, and one-half of the Cranberry iron ore bed. The evidence disclosed that Col. Gaither was a lawyer of high standing and good practice, and that he represented the purchasers Hoke and his associates in completing the sale from Avery and Brown, and that he drew the deed which was executed by Brown's attorney in fact. The purpose of the question was to affect the purchasers with notice of the compromise between Brown and Avery, and of the fact that Brown owned all the mines and minerals on the east side of the line, and not one-half only. The point is not free from difficulty, and authorities differ upon it.

But, so far as federal courts are concerned, the rule has been fixed by the supreme court of the United States in The Distilled Spirits, 11 Wall. 366, 367. In that case, Mr. Justice Bradley, speaking for the court, says:

"The question how far a purchaser is affected with notice of prior liens, trusts, or frauds by the knowledge of his agent who effects the purchase, is one that has been much mooted in this country and in England. That he is bound and affected by such knowledge or notice as his agent obtains in negotiating the particular transaction is everywhere conceded. But Lord Hardwicke thought that the rule could not be extended as far as to affect the principal by knowledge of the agent acquired previously, in a different transaction. Warrick v. Warrick, 3 Atk. 291. Lord Eldon did not concur in this view of Lord Hardwicke. Mountford v. Scott, 1 Turn. & R. 274. And the distinction taken by Lord Hardwicke has been entirely overruled in Dresser v. Norwood, 17 C. B. (N. S.) 466. So that in England the doctrine seems to be established that if the agent, at the time of effecting a purchase, has knowledge of any prior lien, trust, or fraud affecting the property, no matter where he acquired the knowledge, his principal is affected. If he acquire the knowledge when he effects the purchase, no question can arise as to his having it at that time. If he acquired it previous to the purchase, the presumption that he still retains it, and has it present in his mind, will depend on the lapse of time and other circumstances. Knowledge communicated to the principal himself he is bound to recollect, but he is not bound by knowledge communicated to his agent, unless it is present in the agent's mind at the time of effecting the purchase. Clear and satisfactory proof that it was so present seems the only restriction required by the English rule as now understood. With the qualification that the agent is at liberty to communicate his knowledge to his principal [that is to say, that he did not receive it as a confidential communication], it appears to us a sound view of the subject."

This rule establishes the doctrine that a principal is affected by previously acquired knowledge of the agent if the agent had that knowledge in his mind when he made the purchase. It was competent, therefore, for the plaintiff to enter upon a course of examination tending to show previous knowledge of the agent. He was bound to follow this up by evidence tending to show that the agent (Col. Gaither) had this in mind at the time of the purchase. But he was entitled to lay the foundation for this evidence, and the question should have been permitted.

The first assignment of error is that his honor, the trial judge, against the exception of the plaintiffs, permitted R. F. Hoke, a witness for defendant, to relate a conversation had between him and William J. Brown, an attorney in fact for plaintiff J. E. Brown, in which William J. Brown said that the deed executed by him and Gov. Vance as attorney for J. E. Brown, some months before, and the deed executed by the executor of Avery to Hoke and his associates, conveyed the entire mineral interest in the boundaries covered by the deeds, and that Hoke and his associates had a good title to all the mineral interest in that boundary.

In Packet Co. v. Clough, 20 Wall., at page 540, the supreme court, on this subject, says:

"The rule is well stated by Mr. Justice Story that, when the act of the agent will bind the principal, then his representations, declarations, and admissions respecting the subject-matter will also bind him, if made at the same time and constituting a part of the res gestæ. A close attention to this rule, which is of universal acceptance, will solve almost every dif-

ficulty. But an act done by an agent cannot be varied, qualified, or ex- plained, either by his declarations, which amount to no more than a mere narrative of a past occurrence, or by an isolated conversation held or an isolated act done at a later period. The reason is that the agent to do the act is not authorized to narrate what he had done or how he had done it, and his declaration is not part of the res gestæ."

Besides this, the evidence offered and admitted in this case was as to the construction of a deed. The deed speaks for itself. If there be no ambiguity in it, it explains itself. The statement of Brown that Hoke and Sumner had a good title to all the mineral interest in said boundary is a matter of opinion, and not of fact. The admission of this testimony was error. It is true that there was other testimony bearing on this same fact. There are cases when, if a fact is proved by improper testimony, and the same fact afterwards is proved by proper testimony, the allowing of the first testimony is held not to be ground of error. Cooper v. Coates, 21 Wall. 105. But it must be clear beyond all doubt that the erroneous admission of this tes- timony did not and could not have prejudiced the rights of the ex- cepting party. Gilmer v. Higley, 110 U. S. 47, 3 Sup. Ct. 471; Deery v. Cray, 5 Wall. 795; Railway Co. v. Jurey, 111 U. S. 584, 4 Sup. Ct. 566; Railroad Co. v. O'Reilly, 158 U. S. 334, 15 Sup. Ct. 830.

Besides this issue of fact, there was an issue of law: Was the plaintiff Brown estopped by this deed? It is admitted that, if he is, his coplaintiff is also estopped, as he derived all his rights from Brown long after the transaction. His honor, the trial judge, held the deed an estoppel. The purchasers, Hoke and Sumner, desired a perfect title to all the mineral rights in this tract of land. The claims of Avery and of Brown were a cloud on the title to these mineral rights. These claimants knew this purpose on the part of Hoke and Sumner. The deeds were executed towards this end, and were ac- cepted by the purchasers. What did the deed of Brown profess to convey? Were the purchasers induced to accept this deed by any language or conduct on the part of the makers of the deed upon which they had a right to rely and did in fact rely? The consid- eration of the deed is $22,000. It bargains, sells, releases, and con- firms to Sumner and Hoke "the following tract of land, situate and being in the county of Mitchell, in the state of North Carolina; that is, one-half of the mineral interest in the said lands. The habendum is one-half of the mines, minerals, and mineral interests in said lands. The warranty is as to the title to the one-half of the mines, minerals on bank, and mineral interests within the boundaries of the said lands. The title to these mineral interests was investigated by Col. Gaither, as counsel for the purchasers, who advised with them as to the pur- chase. He drew this deed, signed by Brown's attorney in fact, and they executed it as he prepared it. The deed, in fact and in law, was supposed to carry into execution the conclusions of the parties. It is a vital principle "that he who, by his language or conduct, leads another to do what he would not otherwise have done, shall not sub- ject such person to loss or injury by disappointing the expectations on which he acted. Such a change of position is sternly forbidden." Dickerson v. Colgrove, 100 U. S., at page 580. The deed clearly and

without any ambiguity conveys but one-half the mines, minerals, and mineral interests. Hoke and Sumner thought they were getting the whole. Were they induced to accept this deed by any representation, language, or conduct of Brown's attorney in fact? The deed does not convey, or profess to convey, all the right, title, and interest of Brown, to wit, the one-half, etc. It conveys without more the one-half. It does not convey the land. The language is qualified; that is, the one-half of the mineral interest in said land. The purchasers had employed a competent attorney. He drew the deed. He selected the words used. The grantees signed the deed so prepared by him. They knew him well. Both parties may have intended that all the mineral interest should be conveyed. It was not conveyed by this deed. The reason it was not so conveyed, if such was the mutual intent and purpose, was the mistake of Col. Gaither (his honest mistake, no doubt). But it is not a case of estoppel under the case quoted. In our opinion, this construction put on the deed by his honor, the trial judge, was error.

The course taken at the trial of this action at law in the abandonment of every issue but that of estoppel removed the chief reason for ordering the action, and really submitted to the law court an issue which could be decided in equity. It is true that it is a defense also available at law. Dickerson v. Colgrove, supra. But it is equitable estoppel, and its birthplace is the court of equity.

The verdict must be set aside, and the cause be remanded to the circuit court.