BROWN et al. v. CRANBERRY IRON & COAL CO.

CRANBERRY IRON & COAL CO. v. BROWN et al.

(Circuit Court, W. D. North Carolina. August 2, 1897.)

REFORMATION OF DEED—MUTUAL MISTAKE.

The owners of a tract of mineral land negotiated an advantageous sale of the same, but, before it was concluded, the negotiations were suspended, in consequence of notice given the purchasers by two other persons that they claimed an interest in the mineral. The vendors, in order to clear their title and consummate the sale, procured deeds from the claimants, paying therefor a sum approximating $40,000. Formerly the two claimants had held their interests in common, but prior to the execution of such deeds they had partitioned the same by agreement, and then held in severalty. The deed of one of the claimants described the entire tract, purporting to convey an undivided one-half of the mineral therein, with a warranty of title. Twenty years afterwards such grantor brought suit for partition, claiming to still be the owner of an undivided half interest in the mineral in the portion held by him in severalty when the deed was made. *Held*, that the circumstances inducing the purchase, and under which it was made, clearly evidence that it was the intention of the parties to purchase and to sell the entire interest of the claimants, and that the holders under such deed were entitled to its reformation on the ground of mutual mistake.

Moore & Moore, for Brown.

R. H. Battle and Merrimon & Merrimon, for Cranberry Iron & Coal Co.

SIMONTON, Circuit Judge. The original bill in this case was filed on August 16, 1887, seeking partition of certain undivided mineral interests in a tract of land in Mitchell county, N. C. The defendant denied the title of the complainants. Thereupon this court ordered an action at law to establish title. After a trial by jury, in which the denial of title was not pressed by the defendant, and the issues rested only on estoppel by pais and by deed, a verdict was rendered for the defendant. The judgment on this verdict was set aside by the circuit court of appeals, and the case remanded, with

leave to the defendant, if so advised, to file a cross bill, with the view of establishing a mistake in the deeds under which the defendant held, and correcting it if established. 18 C. C. A. 444, 72 Fed. 96. The cross bill has been filed, testimony taken, and the cause is now at issue.

The defendant holds by intermediate mesne conveyance under Hoke, Sumner,. and Hutchinson. In the year 1867, these gentlemen, holding lands in North Carolina, commonly known as the "Cranberry Lands," negotiated the sale of them to parties in New York, for the sum of $200,000. Just before the sale was consummated, Hon. A. C. Avery heard of it, and at once notified the proposed purchasers that he and Brown had claims on the minerals in the land proposed to be sold by Hoke and his associates. This at once interrupted the negotiations. Hoke and his associates, hearing of this claim, concluded that it was shorter and better to purchase the adverse interests, and so remove the cloud on their title. They reached this conclusion notwithstanding that they were advised that the claim was not valid. Negotiations to this end were opened with A. C. Avery, as executor of his father, I. T. Avery, and with the attorneys in fact of John Evans Brown, the other claimant. Brown himself resided in Australia. The negotiations with Avery were concluded first, and his interest in the minerals in the land was purchased for the sum of $17,000. Some days afterwards the negotiations with Brown's attorneys in fact were concluded, after long haggling over the price to be paid. This seemed to occupy their attention, and it was fixed finally at $22,000. The purchasers, in this negotiation with Brown, were represented by Col. Gaither, a lawyer of reputation and experience, and he drew the deed conveying the interest of Brown; both the deed of Avery, dated May 27, 1867, and that of Brown, dated June 7, 1867, conveyed an interest in precisely the same tract of land. This tract is delineated on a plat in the record, and is contained within the lines A, B, C, D, E, F, G, H, I, J, K, and L. Avery conveys "all the right, title and interest belonging to the estate of I. T. Avery, and which said Avery has power to convey as executor, and to that tract or parcel of land lying in the county of Mitchell, state of North Carolina." Then comes a full description by courses, distances, and metes, and continuing: "The said interest hereby conveyed being one-half the mineral interest in said land conveyed by agreement by William Drigger to William J. Brown, and conveyed by said Brown to said I. T. Avery, and also all the tracts of land held by conveyance from T. D. Carter and William Drigger, said lands containing about 4,000 underacres, and known as the 'Cranberry Ore Lands,'"—with warranty of title as against the heirs of Avery. The Brown deed, executed by Z. B. Vance and William J. Brown, attorneys in fact of John Evans Brown, conveys "the following tract of land, situated and being in the county of Mitchell, in the state of North Carolina; that is, the one-half of the mineral interest in said lands." Then follows a full description of the same tract as in the Avery deed, and ending: "Containing some 3,000 acres, and being the same lands condemned for the use of the Cranberry Iron Works, known as the 'Bounty Lands.'" The habendum is: "To have and

to hold the one-half of the mines and minerals and mineral interests in said lands,"—with a general warranty of the title ."to the one-half of the mines, minerals, ore bank and mineral interests within the boundaries of said lands."

It seems that there had been a dispute between I. T. Avery and William J. Brown as to the ownership of these lands, and others, perhaps. In 1853 these differences were adjusted by articles of agreement entered into 8th March, 1853, and carried out by deeds. That by Isaac T. Avery to William J. Brown is dated 18th June, 1853, recorded 25th December, 1866. That by Brown to Avery was recorded 6th August, 1873. These deeds divided the lands between these two parties by a compromise line, which appears in the plat. All the lands on the east side of this line were conveyed to Brown; all on the west side to Avery. On 22d August, 1860, I. T. Avery executed a deed to John Evans Brown (to whom, in the meantime, William J. Brown had to convey his interests), by which he gave Brown the one-half interest in "my mineral interest in the iron ore bank known as the 'Cranberry Ore Bank'" (this was on the west of the compromise line), and the entire interest in all the lands outside of the compromise line. This deed is recorded in the same book as the deed from Avery to Brown, above spoken of. These deeds relate to the same land covered by the deeds to Hoke and his associates. It thus appears that when Avery (executor) and Brown's attorneys in fact made these deeds the land conveyed was not held in common by these parties, but that Avery's estate and Brown each owned an undivided half of the Cranberry ore bed, and that Brown owned the entire mineral interest in so much of the land as was east of the compromise line. The deed of Brown in terms conveys the one-half interest in the minerals, and by these terms he conveys to Hoke his one-half in the Cranberry ore bed, and the one-half of the minerals in the land east of the compromise line. It is this interest of which he seeks the partition. The defendant says that Hoke and his associates desired and intended to purchase the whole of the mineral interest of Brown in the whole tract; that they negotiated for, and in fact purchased and paid for, the whole of this interest; that both parties intended it to be conveyed; that, if the deed did not convey it, it was a mistake,—a mutual mistake,—an error of the draftsman who drew the deed. This is the question to be decided: Did the deed carry out the intent of both parties? Did it convey all that Brown had agreed to convey, and all that Hoke and his associates had contracted and expected that he would convey? Unhappily, we are without the testimony of all the actors in this transaction. We have full testimony of Hoke and his associates. We have the testimony of Z. B. Vance, but William J. Brown's evidence is not in the record. Perhaps he was not alive when the testimony was taken. A declaration of his appears. This, perhaps, under strict rules of evidence, cannot be taken into account.

Looking at the case a priori, the conclusion is almost irresistible that both parties supposed that the entire interest of Brown was being purchased. Hoke and his associates had made a most advan-

tageous sale of these same lands. The sale was interrupted by notice of the claim of Avery's estate and of Brown. The proposed purchasers, about to invest a very large sum of money, would be satisfied with nothing but a clean title. The lands to be purchased were mining lands. Their only use was in working them. Every day's work diminished their value. Every care, therefore, had to be taken, that no outstanding interest should exist to which at some future time they might be called upon to account, and which could share the benefits of their expenditure of capital, labor, and time. Hoke and his associates had to furnish them such a title. Avery and Brown knew of their situation and its requirements. When they were approached for the purchase of their interests, they knew what Hoke and his associates were obliged to get. We are not left to conjecture on this point. Judge Avery, the executor of I. T. Avery, who made the deed, swears that he knew that a clean title was needed. The answer of Sumner and Hutchinson to the suit of Vance and Brown on one of the notes given for this same purchase, put in evidence for one purpose, and so in evidence for all purposes, distinctly declares that the negotiations were for the purchase of the whole of the mineral interests of Brown. This being the case, it is clear that the purchasers negotiated for, and supposed that they were purchasing, the entire mineral interest of Brown, and that the vendors knew this, and consented and agreed to such purchase. Gov. Vance, one of Brown's attorneys in fact, says that the impression on his mind is that they were conveying the entire interest of Brown, although he adds the lapse of time has been so great that he cannot give the grounds for that impression. It is not difficult to see these grounds. He knew that Hoke and his associates were bound to get an absolutely clear title; that they could negotiate for nothing less; that they were paying for nothing less; and as an honorable man, with this knowledge, he was bound to convey them nothing less than an absolutely clear title. This being the understanding, intent, and purpose of both parties, Col. Gaither was instructed to draw the deed carrying out this intent. He drew the deed in question. He had been Brown's counsel when the compromise between him and Avery was made and concluded. Professionally, he knew of this compromise. But, notwithstanding this knowledge, he drew this Brown deed precisely as if no partition had been made between Avery and Brown. This must have wholly escaped his memory. Here was the mistake, and into that mistake the attorneys in fact of Brown also fell, because, under their hands and seals, they acted upon and confirmed it. It cannot be supposed for a moment that, with the knowledge they had of the necessity imposed upon Hoke and his associates of getting a clean title, they could believe that the latter could take less. Fraud will not be presumed, nor will it be lightly charged. It seems clear that this deed was executed by both parties under a mistake of facts, and that it should be reformed. It is so ordered.