JONES et al. v. MacKENZIE et al.

(Circuit Court of Appeals, Eighth Circuit. April 6, 1903.)

No. 1,791.

1. EQUITY JURISDICTION—SUIT TO DETERMINE TITLE TO PERSONAL PROPERTY.
When the title to personal property of ordinary character is in dispute, and the title asserted by the respective parties is a strictly legal title, the remedy of the party out of possession is at law, by an action of replevin, and he cannot maintain a suit in equity to establish his ownership.

¶ 1. See Equity, vol. 19, Cent. Dig. § 154.

2. SAME—POSSESSION OF PERSONAL PROPERTY—EVIDENCE CONSIDERED.

Defendants claimed title to certain railroad ties through a sale made under a chattel mortgage, and also claimed to be in possession; the ties being piled on the land of a third person. An action of replevin was brought against defendants in a federal court to recover the ties, and they were seized by the marshal, but were delivered into the possession of defendants on their giving the statutory bond to deliver them to the plaintiff if he should be adjudged the owner. Pending the action of replevin, complainants, claiming to be the owners of the ties, commenced to remove them, and, on being prevented by defendants, brought suit in equity to enjoin defendants from interfering. *Held*, that defendants had such possession, under claim of legal title, as entitled them to a trial of the right of property before a jury, and that the suit in equity could not be maintained.

Appeal from the Circuit Court of the United States for the District of Minnesota.

Halvor Steenerson (Charles Loring, on the brief), for appellants.

Charles T. Thompson (Arthur M. Keith, Robert G. Evans, and Edwin K. Fairchild, on the brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. R. J. MacKenzie, William MacKenzie, and Donald D. Mann, doing business as partners under the firm name of MacKenzie, Mann & Co., the appellees, filed a bill against Thomas L. Jones and Thomas Lawson, doing business as partners under the firm name of Jones & Lawson, and against Jesse Danley and George Bader, the appellants, setting forth the following grounds for equitable relief, namely: That prior to September 1, 1899, the firm of MacKenzie, Mann & Co. were in possession of about 18,000 railroad ties, which the firm needed to complete a section, about 40 miles in length, of the Minnesota & Manitoba Railroad, in the county of Roseau, in the northern part of the state of Minnesota, which said firm was engaged in building; that these ties had been purchased from one Robert Rogers and had been paid for prior to September 1, 1899, when delivered to the complainants by said Rogers; that said ties were either wholly or in part cut by one G. C. Oaks under a contract with Rogers, and had been paid for by said Rogers, and had been delivered to him at certain points on the Rainy Lake, from whence they were towed and delivered by said Rogers to the complainants, as aforesaid, prior to September 1, 1899, who had caused them, when delivered, to be piled upon the right of way of the railroad which the complainants were engaged in building. The bill further averred that Oaks, who had cut the ties and delivered them to Rogers, on September 18, 1899, executed and delivered to Sjoberg Bros., a partnership doing business in Roseau county, Minn., a chattel mortgage, whereby he undertook to convey the aforesaid ties to Sjoberg Bros. as security for an indebtedness due from him to said firm; that Sjoberg Bros. caused said chattel mortgage to be foreclosed, and at the sale thereunder purchased said ties; that immediately thereafter Sjoberg Bros. pretended to sell and convey the ties to the defendants Jones & Lawson for a consideration of $1,050; that Jones & Lawson never took possession of the ties; that

on or about September 3, 1900, when the complainants proceeded to move the ties from the place where they had been piled, and to place them in the railroad track, Jones & Lawson laid claim to the ties, procured the arrest of one or more of the complainants' employés, and, although such employé was discharged on a hearing had before a justice of the peace in Roseau county, nevertheless threatened to continue such arrests of complainants' employés if they attempted to place the ties in the track, and by so doing terrorized their employés to such an extent that they would not touch or remove the ties; and that by virtue of such wrongful conduct on the part of Jones & Lawson and the other defendants, Jesse Danley and George Bader, the work of constructing said railroad had been practically suspended. The relief prayed for in the bill was that the court would adjudge the claim of Jones & Lawson to the ties in question null and void as against the title of the complainants thereto, and that the defendants might be restrained and enjoined from threatening the employés of MacKenzie, Mann & Co. with arrest if they caused the ties to be removed and laid in the railroad track. Shortly after the filing of the bill the lower court granted an interlocutory injunction against the defendants, such as was sought; and after a final hearing it entered an order requiring the defendants to perpetually desist and refrain from threatening the servants and employés of the complainants with arrest, and from causing the arrest of any of them, for taking or using the ties which were described in the bill of complaint, and enjoining the defendants from preventing the servants and employés of the complainants from taking and using the ties for the purpose of constructing the railroad in question. The appeal was taken to obtain a reversal of the last-mentioned order or decree.

The principal question which arises upon the record, as we view it, is whether the case is one which entitled the complainants to equitable relief. If the complainants had been in actual possession of the ties when the action was instituted, as the bill averred, it may be conceded, though not decided, that the facts alleged might be held sufficient to warrant the interposition of a court of equity, since it was alleged that great injury would result to the complainants if the section of the railroad through Roseau county was not completed prior to the winter of 1899–1900; that no other ties were readily available wherewith to construct that part of the road before the work would be arrested by the approach of winter; and that the acts of the defendants in arresting and threatening the arrest of the complainants' servants and agents had in fact intimidated them to such an extent that they would not handle the ties, or attempt to remove them or place them in the track. These allegations, together with the allegation that the ties had been delivered to the complainants, and that they had paid for the same in full, of which latter fact there was considerable proof, might possibly be regarded as sufficient to justify a court of equity in affording relief on the ground that the acts of the defendants were wrongful, and liable to occasion irreparable injury, as well as breaches of the peace, if both parties were left at liberty to assert their respective claims to the ties by force and with the strong hand. It is obvious, however,

that, if the complainants were not in the actual possession of the ties when the bill was filed, then the case was not one of equitable cognizance, and the bill should have been dismissed on final hearing. It is common knowledge that courts of equity do not entertain bills to settle the title to personal property when the title is legal, nor for the specific performance of contracts relating to personalty, unless the property is of a peculiar character. Bispham's Equity, § 368; Eaton on Equity, p. 527. When the title to personal property, such as railroad ties, is in dispute, and the title asserted by the respective parties is a strictly legal title, and in no sense of an equitable character, a court of law is the forum in which one who is out of possession should seek relief; doing so by an action of replevin, or for the claim and delivery of personal property, as it is sometimes termed in codes of procedure. The true owner of real property, if he is not in possession, cannot maintain a bill in equity to remove a cloud upon his title and to establish it, except in virtue of an express statute giving him the right to sue in that forum; and even then he cannot sue in equity in the federal courts unless the land be vacant and unoccupied, so that a suit in ejectment will not lie. Whitehead v. Shattuck, 138 U. S. 146, 152, 155, 11 Sup. Ct. 276, 34 L. Ed. 873; Sanders v. Devereux, 8 C. C. A. 629, 60 Fed. 311. There is as much, if not greater, reason for enforcing this rule when the title to personalty is in dispute, and the titles are legal. Nor does it make any difference, we think, that, under the statutes of the state where the controversy arises, the defendant, when sued in replevin for the wrongful detention of personal property, may be entitled to retain it until a final hearing and judgment, by giving a bond. Even under such a statute, the relief obtainable in a court of law must be esteemed adequate, although the complainant may not be able to obtain the actual possession of the res as speedily as he would like to do, since, besides recovering the property, he is entitled to recover all the damages which he may have directly sustained by reason of its wrongful detention.

We turn, therefore, to consider the question whether the complainants were in possession of the ties on October 2, 1900, when they filed their bill of complaint. The facts pertaining to the decision of this question are these: After the ties had been cut by Oaks and his subcontractors, pursuant to an agreement with Rogers to supply him with 75,000 ties, the ties now in controversy were either towed or rafted from the place where they had been cut to a point contiguous to the railroad track where they were to be placed. They were piled between the railroad track and a river down which they had been towed or floated, and were piled on the north side of the right of way, but mostly outside of it, and at least five or six hundred feet from the track, as it was eventually laid. They were so piled near the right of way some time in the summer or early fall of the year 1899. They were never inspected by any one, although the contract between Oaks and Rogers, in pursuance of which they had been cut, provided that they were to be paid for "when ties are inspected on right of way." At and prior to the filing of the bill, a controversy seems to have existed between Oaks and Rogers as to

whether the ties in controversy had been paid for; Oaks claiming that they had not been paid for, and that the sum of $9,000 was still due to himself from Rogers. From the time the ties were piled near the right of way, in the summer of 1899, until they were sold, on February 26, 1900, under the mortgage which was executed by Oaks in favor of Sjoberg Bros., they do not seem to have been in the special custody of any one; but in the meantime the government seems to have made a claim to the ties, or part of them, as having been cut on its land, and this claim was pending for some time. One of the members of the firm of Sjoberg Bros. testified that after the firm purchased the ties at the mortgage sale on February 26, 1900, they took possession of them; that they obtained a permit from a man by the name of Berg to allow the ties to remain on his land, where they had been piled, which land Berg was occupying as a homestead claimant; and that the firm also employed a man named Linder to look after them. On March 26, 1900, Sjoberg · Bros. sold the ties in controversy to Jones & Lawson, and thereafter, on May 17, 1900, Rogers brought an action of replevin in the Circuit Court of the United States for the District of Minnesota against Sjoberg Bros. and Jones & Lawson to recover the possession of the ties from the defendants. Thereupon, on May 28, 1900, the defendants in that action gave a bond, as the statutes of Minnesota permitted them to do, and retained possession of the ties. This bond recited the issuance of a writ of replevin against the defendants, the seizure of the ties by the marshal, and bound the defendants, in the penal sum of $12,355, to deliver the ties to the plaintiff, Rogers, at the end of the litigation, if a delivery to him was adjudged. The matter· remained in this shape—that is to say, the ties remained piled where they were on the land of Berg, and the replevin suit last mentioned was pending and undetermined—until some time in the latter part of September, 1900, when the complainants laid ·a spur track from the roadbed, as it was then established, to the ties, and began to load some of them upon cars, whereupon Jones & Lawson protested that the ties belonged to them and were in their possession. This protest was disregarded, whereupon Jones & Lawson procured the arrest of one or two of the complainants' employés. Thereupon this bill was filed, and an interlocutory injunction was obtained, as already stated. The replevin suit which was brought by Rogers against Sjoberg Bros. and Jones & Lawson was not dismissed until some time after the present action was instituted. After the complainants had obtained an·interlocutory injunction restraining the defendants from further interfering with the removal of the ties, they were taken by the complainants and placed in their roadbed as a part of the structure, where they now are.

In view of these facts, we are constrained to conclude and find· that, when the bill was filed by the complainants, they did not have any such possession of the property in controversy as entitled them to appeal to a court of equity for the protection of that possession ·against the alleged wrongful acts of the defendants, and that was the sole ground on which they could seek the aid of a court of chancery. The .learned judge before whom the case was tried below

made no specific finding, either in his opinion or in his decree, that the complainants were in the actual possession of the ties at the time the complaint was filed, and in view of the fact that the ties were seized by the United States marshal in May, 1900, and thereupon delivered into the possession of Jones & Lawson on the execution of a bond requiring them to hold the ties in response to such judgment as might eventually be rendered in the replevin suit, and in view of the fact that the situation remained unchanged until long after the bill was filed, and that the ties were really in custodia legis by virtue of the pending suit in which they had been seized, it is impossible to concede that the complainants had any such possession, actual or constructive, as entitled them to apply to a court of equity for relief by an original bill. If they had any right of action, it was at law by a suit in replevin; and it is plain, we think, that the defendants had such possession at the time the bill was filed as would have served to support such an action. We are of opinion that on the final hearing of the cause the bill ought to have been dismissed. It is very obvious from an inspection of this record that the defendants asserted a legal title to the ties, and also claimed to be in the actual possession of them, when the bill was filed. They were entitled to a trial of this right of property before a jury, and they have been deprived of that right by the proceedings actually taken, while the complainants have succeeded in obtaining the possession of the ties, and have converted them to their own use, so that the possession cannot be restored to the defendants, even if a jury should find that they were the lawful owners.

To insure the defendants below their constitutional right to have the title which they assert tried to a jury, we think that the decree below should be reversed and annulled, with a direction to the lower court to dismiss the bill, and that such dismissal be entered without prejudice to the right of the defendants below to bring an action against the complainants for the conversion of the ties. It is so ordered.