## KELLAR v. CRAIG et al.

(Circuit Court of Appeals, Fourth Circuit. November 5, 1903.)

### No. 485.

1. QUIETING TITLE—JURISDICTIONAL ALLEGATIONS—POSSESSION.

Equity has jurisdiction of a bill to remove a cloud upon the title to real estate where both the legal title and possession in complainant are shown by the bill; but the requisite possession is negatived where it appears from the bill that defendants, with complainant's consent, drilled, producing oil wells on the land in compliance with the terms of the lease, which is alleged to constitute the cloud on complainant's title, and that they are in possession of such wells, and producing oil therefrom, having their own casing, tools, and machinery on the land.

2. OIL LEASES—REMEDY OF LESSOR FOR BREACH—EQUITY JURISDICTION.

After the leasehold estate of a lessee, under an oil and gas lease providing for the development of the land and the operation of any producing wells obtained on a royalty basis, has vested by the completion of paying wells, and he is still in possession of the same, producing oil therefrom, if he fails to fully develop the land or protect its lines the lessor's remedy is not by a suit in equity for a forfeiture of the lease, but by an action for damages for its breach.

3. SAME—FORFEITURE.

In all oil and gas leases a covenant to "protect the lines" and to "well develop" the land is implied, and the fact that such covenants are expressed in the same general words adds nothing to the lessee's obligation, and the lease cannot be forfeited for a breach of such covenants where he has in good faith done what in his judgment was required to comply therewith.

4. SAME—CONSTRUCTION OF COVENANTS.

A covenant in an oil lease to drill one well every two months after oil is produced until the land is well developed is complied with where the

required number of wells have been drilled, although not at regular intervals of two months, and a court of equity will not decree a forfeiture because of such fact, especially where the lessor made no objection on that ground when they were being drilled.

5. SAME—ABANDONMENT.

A court will not decree a forfeiture of an oil lease on the ground that the lessee has abandoned development of the land, where up to the time of the filing of the bill he has drilled the full number of wells specifically required by the lease, and is still in possession of and operating the same.

Appeal from the Circuit Court of the United States for the Northern District of West Virginia, in Equity.

V. B. Archer and William Beard, for appellant.

A. D. Follett, for appellees.

Before GOFF and SIMONTON, Circuit Judges, and KELLER, District Judge.

GOFF, Circuit Judge. The appellant filed in the court below his bill in equity, alleging the forfeiture of a lease made by him on the 16th day of August, 1898, for oil and gas purposes, to one I. M. Latshaw. He set out in his complaint that he was the owner of the fee of the land—about 217 acres—and that he was in the actual possession of the same; that the lease referred to had become forfeited because of the failure of those claiming under it to comply with the express covenants therein contained; that the same was a cloud upon his title, which he prayed might be removed by the decree of a court of equity; and that irreparable damage was being caused to his said land by the removal therefrom by the defendants of the oil found therein.

To this bill the defendants below filed a demurrer, which the court on hearing sustained, and entered a decree dismissing the bill. This action of the court is the error assigned—the only question presented for our consideration. Appellant insists that the court below erred in holding that on the case made by the bill equity had no jurisdiction. The appellees contend that, if the complainant below has any ground of complaint or claim for damages, his remedy is in a court of law, in which full and adequate relief is provided for such matters.

Undoubtedly equity has jurisdiction of a bill the object of which is to remove a cloud upon the title of real estate owned by a complainant, thereby protecting him in his possession, which, as well as the legal title, must be alleged and proven. Frost v. Spitley, 121 U. S. 556, 7 Sup. Ct. 1129, 30 L. Ed. 1010; Orton v. Smith, 18 How. 263, 15 L. Ed. 393; Fussell v. Gregg, 113 U. S. 550, 5 Sup. Ct. 631, 28 L. Ed. 993.

The bill alleged the forfeiture of the lease, and that the defendants below were removing the oil from the land under the protection given them by such forfeited contract. This, in effect, charged that the defendants were committing such acts as if not prevented would produce irreparable damage to complainant's realty by removing from it that which gave it value, thereby destroying the inheritance; and this, especially in controversies relating to mining, oil, and gas leases, has resulted in the modification of the rather strict rules formerly ap-

plied in the earlier English and American cases regarding the jurisdiction of courts of equity. These points are ably urged by counsel for appellant, and we think are sufficient to show the jurisdiction of the court below, unless other matters raised by the bill, and directly connected with the developments made by the defendants under the lease mentioned, demonstrate to the contrary.

We find from the bill that the defendants below were, when this suit was instituted, claiming under said lease, and that the same had been duly assigned and transferred to them; that they had in use in connection therewith a large amount of casing, tubing, and other oil-well utensils, as also valuable engines and machinery, all of which were located upon the land, and were in constant use in the production of oil from a number of paying wells which they had drilled thereon, during the period of time intervening between the date of the lease and the filing of the bill; that it was stipulated as follows in the lease, viz.:

"And it is further understood and agreed and made a condition of this lease, that the lessees and all persons holding under him or them, are to protect the lines of the premises hereby leased, and pay rental until oil is produced in paying quantities, and drill one well every two months after oil is produced in paying quantities until this lease and the premises hereby demised are well developed; and the lessees shall locate all wells adjacent to production as long as the wells on the adjacent territory are producing wells, and all such wells on the premises hereby leased shall be continuously kept in a proper condition for producing the largest quantity of oil during the time that such wells on the adjacent property are producing. And in case oil shall not be found on a part of this lease at a lesser depth than the Berea sand, then one well shall be drilled through the Berea sand; provided, further, that in case any well shall be put down on any of the lands adjoining the premises hereby leased by the lessees or others to and through the Berea sand, and the same shall not by reason of the absence of oil be a paying well, then it shall not be incumbent on the lessees to drill a well on the premises hereby leased to and through the Berea sand. * * * It is further understood and agreed and made an express condition and stipulation of this lease, that a failure on the part of the party of the second part to comply with all the stipulations of this agreement as hereinbefore set forth, shall render this lease null and avoid and of no effect to the party of the second part, his heirs or assigns, and the party of the first part in case of such failure shall have the right at any time to terminate this lease."

It also appears from the bill that the defendants below have paid all rental due, and have drilled on the leased premises seventeen wells, seven of which were dry holes, and the other ten producing wells; that the first producer was drilled in on May 8, 1900; that since then fifteen other wells were drilled by defendants below, before the bill was filed, all with the consent of the appellant, who during all of that time received regularly his portion or royalty of the oil produced from said wells, and who at no time during said period claimed the forfeiture now alleged.

The appellant insists that the court below should have decreed the lease forfeited for the following reasons, viz.: Because appellees failed to protect the lines of said lease; because they failed to well develop the land; because they failed to drill one well every two months after the oil was produced; and because they have abandoned developments.

The bill shows that on the 8th day of May, 1900, the first paying well on said land was completed, and it follows that on that day the inchoate right theretofore existing in appellees to search for oil and gas ripened into a fully vested leasehold estate. If by the abandonment, or failure to pay rental, a forfeiture had resulted before the finding of oil had produced such vested right, and the lessor had promptly asked the aid of a court of equity in removing the cloud on his title caused by such forfeited lease, his suit would have been entertained, and it is more particularly to cases of such character that our attention has been called by counsel for appellant.

The grounds of forfeiture relied on in this case are for breaches of the lease alleged to have been committed since the vesting of such leasehold estate, and concerning them the court below held that equity had no jurisdiction. After the production of oil under a lease of the character involved in this case, if the lessee, in possession and still producing oil, fails to fully develop the land, or neglects to protect its lines by drilling other wells, we think the lessor's remedy is not by way of forfeiture of the lessee's right to operate under the lease, but by an action for the damages caused by such breaches. Colgan v. Oil Company, 194 Pa. 234, 45 Atl. 119, 75 Am. St. Rep. 695; Young v. Oil Company, 194 Pa. 243, 45 Atl. 121; Ammons et al. v. South Penn Oil Company, 47 W. Va. 610, 35 S. E. 1004; Harness v. Eastern Oil Company, 49 W. Va. 232, 38 S. E. 662; Erskine et al. v. Forest Oil Company (C. C.) 80 Fed. 583.

It should be observed here that while the covenants of this lease to "protect the lines," and to "well develop" the land, are usually considered as express agreements, still, so far as the matters we are now considering are concerned, they must in effect be treated as implied covenants would be, for the reason that they are so indefinite, and that no particular number of wells are required to be drilled, nor are any special points designated along the line, or on the land, at which wells are to be drilled. In all leases for oil and gas purposes, a covenant to "protect the lines" of and "well develop" the land leased is implied by law, and so it follows that the general words relating to those matters, inserted in the lease under consideration, really add nothing to the obligations assumed by the lessee concerning such work. In such leases, where general covenants of that character are found or are implied, the lessee or his assigns are permitted to determine the character of the work to be done, and such ascertainment by him or them, in the absence of fraud, disposes of the question. But in addition to this, in the case we now consider it is quite evident that defendants below in the drilling of the seventeen wells mentioned, along the lines and for development, did so with the consent of the appellant, who was then satisfied with such work and fully acquiesced therein.

Appellant's claim of an absolute forfeiture of the lease, because of the failure of the appellees to drill one well every two months after oil was produced, is untenable, and regarding it the demurrer was properly sustained, for the reason that such drilling was only to be continued until the land was "well developed," and there is nothing

in the bill showing bad faith on the part of the appellees concerning such development. The allegation in the bill that the land was not "well developed" must be considered on demurrer, in connection with the terms of the lease relating to that matter, the proper construction of which we have heretofore given. And besides, as a matter of fact, did not the appellees really complete, not at regular intervals of two months it is true, but still within the time intervening after the finding of oil and the filing of the bill, more wells than they were required by the lease to drill? Oil was found May 8, 1900, the bill was filed May 24, 1902, and in the meantime the appellees caused to be drilled fifteen wells. Surely a court of conscience should place no other construction on this clause of the lease, especially when considering the same in connection with that portion of appellant's bill applicable thereto, than did the court below. The insistence that if four wells be drilled within a period of two months, when only one was required by the lease, that nevertheless one additional well must be drilled within the two months immediately following, is without merit, and when taken in connection with appellant's conduct, as shown by his own bill, during the time of the development made by appellees, is unconscionable.

The only matter remaining is that regarding the charge in the bill of the abandonment of development by appellees. This allegation must be read with other parts of the complaint, from which it appears that appellees were, at the time the bill was filed, still producing and removing oil from the land, and still exercising acts of ownership over the lease; that they had then drilled the number of wells required by the terms of said lease; that the method of developing the property was not described in the lease, and was therefore subject to their own plans; and that there is no claim of fraudulent conduct in the exercise of the discretion confided to them.

The bill also clearly demonstrates that the appellees held the possession of the property, the leasehold estate, at the time this suit was instituted, which possession was entirely consistent with the possession by the appellant of the surface of said land for farming and agricultural purposes. And this showing by the bill refutes the allegation therein that appellant was in possession, and takes from his case one of the essential elements required in order to maintain a bill to remove a cloud upon his title. The real object of appellant's suit was to obtain, by means of a decree of forfeiture, the control of the oil contained in the land leased by him to Latshaw, the possession of which the bill admits has been with the appellees since the lease was assigned to them.

The demurrer was properly sustained, and there is no error in the decree complained of, which is hereby affirmed.