BUCHANAN CO. v. ADKINS et al.

(Circuit Court of Appeals, Fourth Circuit. November 4, 1909.)

No. 860.

1. INJUNCTION (§ 38*)—NATURE AND GROUNDS—ACTIONS AND PROCEEDINGS IN AID OF WHICH INJUNCTION IS AUTHORIZED.

While, under certain circumstances, a complainant out of possession may be awarded an injunction preventing the destruction of the property, it should be in cases only where an action at law is either pending or contemplated and ancillary thereto so as to preserve the status quo.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 86–90; Dec. Dig. § 38.*]

2. QUIETING TITLE (§§ 10, 12*)—RIGHT OF ACTION—TITLE AND POSSESSION OF COMPLAINANT.

Only a complainant who has a clear legal title to land as well as its actual possession has the right to claim the aid of a court of equity to quiet his title, or remove a cloud therefrom.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 8–12, 36–42; Dec. Dig. §§ 10, 12.*

Necessity of possession in suits to quiet title, see note to Jackson v. Simmons, 39 C. C. A. 522.]

3. QUIETING TITLE (§ 4*)—JURISDICTION—ADEQUATE REMEDY AT LAW.

A federal court of equity is without jurisdiction of a suit by a complainant alleging title to a tract of land embracing 147,000 acres against

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a large number of defendants, each of whom is alleged to claim title to a separate portion of such tract and to be in possession of the same, the greater number under color of title, and to have been so in possession for varying lengths of time not stated, the averred purpose of the suit being to determine the adverse claims of title and avoid separate actions at law which would afford a complete and adequate remedy in each case.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. § 6; Dec. Dig. § 4.*]

4. QUIETING TITLE (§ 5*)—GROUNDS OF JURISDICTION—AVOIDANCE OF A MULTI-PLICITY OF SUITS.

The claimant of a large tract of land, separate portions of which are in the possession of each of a large number of persons claiming title in various ways, cannot maintain a single suit in equity in a federal court against all of such adverse claimants to determine the question of title, on the ground of avoiding a multiplicity of actions at law, since, even if such suit could in any case be maintained, it would not obviate the necessity of trying the case of each defendant separately.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. § 13; Dec. Dig. § 5.*]

Appeal from the Circuit Court of the United States for the Western District of Virginia, at Abingdon.

Suit in equity by the Buchanan Company against Jane Adkins and 725 others. Decree dismissing bill on demurrer, and complainant appeals. Affirmed.

J. L. Jeffries and S. B. Avis (Jeffries & Lawless and W. H. Leonard on brief), for appellant.

William H. Werth and E. M. Fulton (A. S. Higginbotham, Chapman & Gillespie, J. H. Stinson, and Ayers & Fulton, on the brief), for appellees.

Before GOFF and PRITCHARD, Circuit Judges, and DAYTON, District Judge.

GOFF, Circuit Judge. The complainant, a corporation of the state of West Virginia, filed this bill against the defendants, 726 in number, citizens of the state of Virginia, alleging that complainant is the owner in fee simple of a tract of 146,109¼ acres of land, in the county of Buchanan, state of Virginia, conveyed to it by W. L. Dennis, county clerk of that county, and C. W. Tebault and wife, by deed dated February 25, 1905, which gives the metes and bounds of the tract; that it was such part of a patent from the commonwealth of Virginia to Richard Smith and Henry Banks, dated November 16, 1795, for 200,000 acres, as was situated in the state of Virginia, the residue thereof being in the state of Kentucky; that the same by a regular, complete, and perfect chain of title, through a succession of conveyances, was acquired by Frederick Pearson, in whose name said land was duly assessed for taxes for the year 1876, and the succeeding years, including 1905; that, the taxes for the years 1876 to 1883 being delinquent and unpaid, the land was on the 12th day of October, 1886, sold for the taxes so unpaid, and was purchased by the state of Virginia, in the manner provided by the laws of that state; that pursuant to

section 666 of the Code of Virginia of 1904 C. W. Tebault filed his application for the purchase of the land with the clerk of the county court of Buchanan county, and having thereafter sold his interest therein, and his right to purchase the same to the Buchanan Company, the said W. L. Dennis, as county clerk, together with C. W. Tebault and wife, conveyed the same to complainant by the deed before mentioned; that the land when patented was and has continued to be wild and uncultivated, consisting of mountains covered with heavy and valuable timber, unfit for cultivation, except as hereafter mentioned, its chief value being the timber thereon, except possibly that coal may be discovered under the surface thereof; that each of the persons who owned the land under the patent and subsequent conveyances, constituting the chain of title under which complainant is the owner, beginning with the year 1822, took and held actual as well as constructive possession thereof, and exercised open, visible, and notorious acts of ownership upon the same, and employed agents and tenants residing thereon to take charge of it, and that complainant has, since it purchased the same, entered upon the land, taken possession of and appointed superintendents over it, and that complainant's possession extends to the boundaries thereof; that each of the defendants is seeking to assert some sort of claim to portions of the land, the character of which as to many of them is unknown to complainant, but it alleges that the title it holds to the same is superior to the right and title of each of such defendants as to a very large part of the land, if not as to all of it; that many years after the land had been acquired by those through whom it passed to Pearson, and in many cases after he had become the owner and was in possession thereof, and in other cases, after the state of Virginia had purchased the same, the defendants, or those under whom they claim, entered upon portions of said land, made small clearings thereon and lived upon them, occupying for that purpose only a few acres; that some of them have obtained junior patents from the state for tracts of land located within complainant's boundary; that others have secured pretended statutory court rights for certain small parcels, while others have no color of title whatever, and are mere squatters; that many others have received and placed upon record deeds and conveyances from persons who had illegally entered upon said land.

Complainant further alleged that, as it acquired title to all of the land mentioned through said single deed and chain of title, its right as against each and all of the defendants arises from a common source, and is common between it and each and all of them; that, as it is in actual as well as constructive possession of the land, no one of the defendants can, or does, hold possession of any part thereof beyond the portion actually occupied by him or her; that those, who acquired court rights did so unlawfully, not being in actual occupancy of any part of the land, or they obtained the same for tracts largely in excess of what they in fact actually occupied, thus acquiring the same by fraud and false testimony, and that, therefore, the aid of a court of equity will be necessary to investigate and set aside such claims; that in the year 1885 the clerk's office of Buchanan county with all of its records was destroyed by fire, and that since that time

many proceedings have been instituted pretending to follow the statute law of Virginia (which provides how lost deeds and other records may be set up and established), under which many of those now claiming to own land within complainant's boundary undertook to "set up" deeds to themselves and to those under whom they claim, which they alleged had been burned in said courthouse fire, to which proceedings neither complainant nor those under whom it claims nor the state of Virginia were made parties; that by such frauds, impositions, and false testimony the court was induced to enter many orders in such proceedings, establishing deeds which never existed, and in some cases granting many times the quantity of land which had been originally conveyed; that it will be necessary to resort to equity to investigate and attack the validity of those "set up" conveyances, as well as the regularity of the proceedings by which they were established; that while such defendants only held and now only hold possession of small portions of complainant's land, which they actually occupy, they are under said junior patents, and the illegal court rights, as well as the false and pretended deeds, claiming to own and are asserting title to large boundaries of it, including much of its wild and timbered land, which they do not and cannot actually occupy; that in a great many instances the conveyances, or other evidences of title, under which many of the defendants pretend to hold possession, describe the land without course and distance, and merely by reference to stones, trees, and natural objects common to that section, thereby rendering the same difficult to locate, and particularly so for a jury; that unless the limitation prescribed by law protects the title of complainant to the entire tract which was conveyed to it, upon the production of the evidence that will be offered, it may appear that as to some of the small portions actually occupied by the defendants title by adverse possession had ripened against complainant, or against said Pearson, prior to the year for which the taxes were assessed, concerning which the land was sold to the state of Virginia; that a number of junior patents have been issued to tracts of land of considerable size within the boundary of complainant's tract, the lines of which junior patents are greatly interlocked, whereby in such cases the same land is found to be embraced within the lines of overlapping junior grants; that in a considerable number of instances two or more defendants are occupying clearings within the same interlock, and are also claiming other land within as well as without such interlock, some claiming under conveyances from one patentee, and some under deeds from another, thereby making it exceedingly difficult if not impossible for a jury, in an action at law to determine the tracts each defendant is actually occupying, and the location of the land claimed by him; that in a great many instances defendants claiming adjacent lots of land located within complainant's boundaries are disputing between themselves over the lines dividing their respective holdings, and such is the confusion thereby created that litigation exists among them concerning said lines and holdings, which in connection with those tracts adjacent thereto as to which complainant has superior title a jury would be unable to determine the tracts the defendants hold by a title superior to complainant's, and what tracts complainant owns; that the

same could not be described in a verdict should actions of ejectment be instituted, and therefore complainant charges that it would be impossible to obtain relief through such actions, or by other proceedings at law; that, if a single suit were brought in ejectment, it would be impossible for a jury to try or determine the same, nor could complainant give the description in his declaration which the law requires of the land held by the defendants sought to be recovered, nor from the mass of testimony which necessarily would be introduced could the jury render an intelligent verdict as to each tract, or the court enter a judgment sufficiently definite to be executed; that, if separate actions were brought, the result would be an endless multiplicity of suits, and cause the expenditure of enormous sums of money, thereby absorbing a large portion of the value of the property, greatly exceeding what it would cost to try the titles in a single chancery suit, and the time required to try all the separate suits would consume many terms of court, if not many years; that therefore, as the remedy at law is so inadequate, incomplete, inefficient, and uncertain, a court of equity should entertain jurisdiction, and grant the relief complainant is entitled to.

It is further set forth in the bill that, though the claims on the part of defendants are worthless and invalid as against the title of complainant, they nevertheless constitute such a cloud upon the same, and such an impediment to the enjoyment of the property by complainant, as to practically destroy the use and value of it; that complainant desires to have constructed through said land a railroad for the transportation of its products, which will result in the development of that section of the country, but that so long as the present condition of affairs continues it will be impracticable to do so, and hence a court of equity should quiet complainant's title to said tract of land; that the most efficient, if not the only, way that can be accomplished will be to summon all of said defendants to answer complainant's bill, and to order a master commissioner to take evidence, and report what lands the several defendants are entitled to hold as against complainant, if any, and then to enter such decrees as may appear necessary to quiet complainant's title to the land, and place it in full and complete possession thereof.

Complainant further alleged that some of the defendants were cutting the valuable timber upon said land, and were threatening to cut and dispose of much more, and will do so unless restrained by injunction; that contracts for the sale of other portions of the timber had recently been made, and that the same would be cut and removed unless defendants were restrained from so doing; that the value of the property will be greatly impaired by the cutting of the timber, which is the real substance of the estate; that each of the defendants is insolvent and entirely unable to respond in damages for the value of such timber; and that, therefore, the court should restrain them from cutting and removing it.

The prayer was that subpœnas directed to the defendants do issue, and they be required to appear and answer, and that a master commissioner be directed to inquire and report by what title each of the defendants claims the land he pretends to own, what portion, if any,

of the tract conveyed to complainant is owned by the defendants respectively, by a superior title to that of complainant, and what land it is entitled to under the conveyance mentioned; that the defendants be required to produce their title papers and to disclose by what right they assert ownership of the land claimed by them; that a decree be entered removing said clouds from complainant's title and quieting the same, and directing that full and complete possession of the land be delivered to complainant; that decrees be entered against the defendants, as may from time to time be proper under the evidence produced; that an injunction be.awarded restraining each defendant, his agents, and employés and all other persons from cutting, removing, selling, receiving, or interfering with the standing timber on said land, : or from committing any waste thereon; and also for such general relief as to equity pertains.

An amended and supplemental bill was subsequently filed, alleging among other matters that no suit of any kind had been brought by any of the defendants, or by any one else to set aside and annul the deed made by W. L. Dennis, clerk, and C. W. Tebault and wife to complainant, mentioned in the original bill, and that more than two years had elapsed from the time the same was recorded in the office of the county clerk of Buchanan county; that none of the defendants acquired any portion of the land, by any right or title from, through or under Frederick Pearson, or complainant, or from any of the parties under whom Pearson claimed title, but that each and all of them claim adversely thereto; that largely over one-half of said parcels of land so held by defendants were not held in possession by them, or those under whom they claim, for a sufficient length of time to have barred the right of said Pearson to recover the same in the year 1876, the year for which the taxes were assessed for which the land was sold, and that at least one-half of said parcels were entered upon, and the color of title under which they are claimed, if any, originated after the state of Virginia had purchased the land for taxes in the year 1886.

Process was duly served, many of the defendants appeared by counsel, and joint and several demurrers were filed. For cause of demurrer it was, in substance, set out that the bill is multifarious; that whatever remedy the complainant may have is at law, and not in equity; that there is no equity in the bill; and that complainant alleges no such possession of the land as entitles it to the relief prayed for. The matters of law raised by the demurrers came on in due time to be argued by counsel, on consideration of which the court entered an order dismissing complainant's bills. From the decree so entered this appeal is prosecuted.

Appellant insists that it was not necessary that it should show—by its bill and exhibits—that it had a true and complete paper title to the land it claimed to own. Complainant below simply alleged that by "a succession of conveyances" such true and complete title was acquired by Frederick Pearson, and that complainant afterwards regularly acquired the same. The muniments of its title were not presented for the consideration and judgment of the court, which was asked to decree that defendants in whom the bill in fact alleged the title to some

of the land to be should be restrained from enjoying it, and compelled to deliver its possession to complainant on the mere declaration that superior title was owned by it, such declaration not even having been verified. There is no merit in this contention, nor in the suggestion that complainant should have been permitted to so amend its bill as to obviate such omission, for, conceding such amendment to have been made, other good and sufficient reasons would have impelled the decree of dismissal.

The claim that the court below was in error in holding that the bill should show before injunction for waste would issue that complainant had instituted an action or actions at law for the recovery of the land, or intended so to do, is also untenable. Complainant intended by its bill to avoid an action at law, and to transfer to a court of equity the settlement of the controversy caused by the conflicting titles held by it and the defendants. About this there can be no doubt, for the reasons for ignoring the law side of the court are frankly and plainly given. Complainant did not ask that equity intervene for the purpose of restraining destruction of the property until the title could be ascertained by litigation at law, but, on the contrary, alleged that an action for that purpose could not be effectively prosecuted at law; hence it claimed that an injunction should issue and stand until a master could report as to the true titles. No authority is cited to sustain this proposition, and we incline to the opinion that the books will be searched in vain for one. The bill could not be amended so as to countenance the pendency of an action of ejectment without changing entirely its original object, and that was not permissible.

As the bill read when it was dismissed, the court should not have awarded the injunction asked for, as it was not advised which of the defendants were impairing the value of the estate; the allegation being that all were not. But, had that information been given, still under the circumstances, for reasons we have referred to, and for additional and most pregnant cause yet to be given, it would have been error to have granted the restraining order prayed for. While under certain circumstances a complainant out of possession may be awarded an injunction preventing the destruction of the property, it should be in cases where an action of law is either pending or contemplated, and ancillary thereto so as to preserve the status quo. Such action is not intended here, complainant desiring to avoid it, yet asking an injunction against what is called "waste and threatened injury," by defendants who are in possession. Erhardt v. Boaro, 113 U. S. 537, 5 Sup. Ct. 560, 28 L. Ed. 1113; Buskirk v. King, 72 Fed. 22, 18 C. C. A. 418; King v. Campbell (C. C.) 85 Fed. 814; 22 Cyc. 827; Story, Eq. Jurisp. (6th Ed.) § 929; Waterloo Mining Co. v. Doe et al., 82 Fed. 45, 27 C. C. A. 50; Taylor v. Clark (C. C.) 89 Fed. 7; Davidson v. Calkins (C. C.) 92 Fed. 230; Jerome v. Ross, 7 Johns. Ch. (N. Y.) 315, 11 Am. Dec. 484, and cases cited in note; Duvall v. Waters, 1 Bland (Md.) 569, 18 Am. Dec. 350; Bracken et al. v. Preston et al., 1 Pin. (Wis.) 584, 44 Am. Dec. 412.

The assignments of error relating to the refusal of the court to entertain the bill for the purpose of quieting title and removing clouds thereon cannot be sustained, as it is only those who have a clear legal

title to land, as well as its actual possession, who have the right to claim the aid of a court of equity to give them peace or dissipate a cloud upon said title. Orton v. Smith, 59 U. S. 263, 15 L. Ed. 393; Fussell v. Gregg, 113 U. S. 550, 5 Sup. Ct. 631, 28 L. Ed. 993; Frost v. Spitley, 121 U. S. 552, 7 Sup. Ct. 1129, 30 L. Ed. 1010; Dick v. Foraker, 155 U. S. 404, 414, 15 Sup. Ct. 124, 39 L. Ed. 201; Stearns v. Harman, 80 Va. 48; Smith et al. v. Thomas et al., 99 Va. 86, 37 S. E. 784; Glenn v. West, 103 Va. 524, 49 S. E. 671; Steinman v. Vicars, 99 Va. 595, 39 S. E. 227; Kellar v. Craig et al., 126 Fed. 630, 61 C. C. A. 366.

As we understand the bill in its entirety, giving due effect to its many and somewhat contradictory statements, keeping in mind the rule that on demurrer the allegations are to be construed strongly against the complainant, it clearly appears that the defendants are actually residing upon the various portions of the land they respectively claim, holding the same by patents from the state, by deeds, by court claims, by color of title adverse to the title of complainant; that in some instances their titles have become by adversary occupation superior to the title of complainant; that some of the defendants entered into their occupancy prior to the year 1876, others between the years 1876 and 1886, and still others after the latter date; some in possession under color of title for more than 30 years, and, as the presumption is that the complainant has stated its case most favorably to itself, the inference is that the greater part of the defendants have so occupied the land under color of title for that period of time, which will bar recovery thereof by any claimant under the grant of November 16, 1795; that neither Pearson or any one claiming under him has had actual possession of any part of the land claimed by defendants since the year 1876, or exercised ownership over any of it by selling, conveying, or leasing any part thereof; that during all of these years some of the defendants, or those under whom they claim, have been in the actual adversary possession of large portions of the land in controversy. It thus appears that from the bill we are unable to find that complainant had either the legal title to or the possession of the land in controversy at the time it asked a court of equity to quiet its title, and to remove the clouds thereon caused by the claims asserted by the defendants. Before equity will entertain a bill to either quiet title, remove a cloud therefrom, restrain waste, or prevent a multiplicity of suits, it must appear that the complainant has a valid legal title to the land he claims, as well as the right to recover against each and all of the defendants. Measured by this standard, the case made by the complainant has no place in a court of conscience.

We are not impressed with complainant's allegations concerning the jurisdiction of equity in regard to confused boundaries, for, while under certain conditions such jurisdiction most undoubtedly exists, still it has no application to the facts presented by this bill. If complainant establishes a perfect legal title to the land it claims, locates the boundaries of the same, and shows occupation by the defendants of various portions thereof, then, if such defendants do not establish their respective holdings with that accuracy which will enable them to be identified by the verdict of a jury, they will not succeed in holding the

land they claim. If there is a controversy among the defendants as to the true lines between their respective patents, deeds, or claims, such contentions do not relate to the location of complainant's lines, nor can they be disposed of in this suit; nor by the allegations in the bill contained can those defendants be deprived of their constitutional right to the verdict of a jury concerning the validity of their respective titles. If complainant's title was not denied, and if the defendants claimed adjacent lands, or tracts within the limits of complainant's boundary, under titles not disputed, and there should arise contentions concerning the true location of the lines between them, then under certain circumstances equity would intervene to settle such dispute. But that is not this case, for its real object is to settle adverse titles, and not to define boundaries; to secure possession of land held by others, concededly under color of title; to obtain by the decree of a chancellor that which under our jurisprudence can only be had by a judgment rendered on the verdict of a jury. Section 723 of the Revised Statutes of the United States, which was part of the judiciary act passed by Congress in 1789 (Act Sept. 24, 1789, c. 20, § 16, 1 Stat. 82 [U. S. Comp. St. 1901, p. 583]), is as follows:

"Suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate, and complete remedy may be had at law."

All suits which have for their object a judgment for the recovery of either real or personal property should be prosecuted on the law side of the courts of the United States, and this rule cannot be obviated by an allegation of fraud, or of conspiracy, because of the constitutional right of the defendants to a trial by jury. In this case the complainant alleges it has title to certain real estate, and admits that the defendants are in possession of it, consequently the action of ejectment not only affords a plain and complete remedy, but is in the absence of conditions showing well-established grounds for equitable jurisdiction—which this bill does not present—the only proper method of procedure.

The Supreme Court of the United States has by frequent decisions passed upon the question we are now considering, and has we think clearly established the rule that, in cases presenting the facts, circumstances, admissions, and allegations found in complainant's bill, the only remedy is at law. We do not deem it essential to discuss and apply those cases, but cite them as conclusive of the correctness of the result we have reached. We also are of opinion that had there been no demurrers filed, and the case had been submitted on pleas, answers, and master's report that the court on its own motion, for jurisdictional reasons, would have been compelled to dismiss it. Irvin v. Dixion, 9 How. 10, 28, 13 L. Ed. 25; Hipp et al. v. Babin et al., 19 How. 271, 278, 15 L. Ed. 633; Lewis v. Cocks, 23 Wall. 466, 23 L. Ed. 70; Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, 34 L. Ed. 873; Allen v. Pullman's Palace Car Co., 139 U. S. 658, 662, 11 Sup. Ct. 682, 35 L. Ed. 303; Wehrman v. Conklin, 155 U. S. 314, 15 Sup. Ct. 129, 39 L. Ed. 167; Gordan et al. v. Jackson (C. C.) 72 Fed. 86; Erskine et al. v. Forest Oil Co. (C. C.) 80 Fed. 583; Mc-

Guire v. Pensacola City Co., 105 Fed. 677, 44 C. C. A. 670; Jones v. MacKenzie, 122 Fed. 390, 393, 58 C. C. A. 96; Brown et al. v. Cranberry Iron & Coal Co., 72 Fed. 96, 18 C. C. A. 444; Manners v. Manners, 2 N. J. Eq. 384, 35 Am. Dec. 512; Obert v. Obert, 10 N. J. Eq. 98; Carberry et al. v. West Virginia & P. R. Co., 44 W. Va. 260, 28 S. E. 694; Northern Pac. R. Co. v. Amacker, 49 Fed. 529, 537, 1 C. C. A. 345; Southern Pac. R. Co. v. Goodrich (C. C.) 57 Fed. 879; Ashburn v. Graves, 149 Fed. 968, 971, 79 C. C. A. 478.

It is plainly apparent from the bill that, to secure equity jurisdiction, complainant chiefly relied upon the allegation that a multiplicity of suits would be thereby prevented. The argument submitted to sustain this position is utterly fallacious. On this question the learned judge who so carefully considered this case in the court below well and pertinently stated the law applicable thereto, and we quote his words approvingly:

"The main contention of complainant's counsel seems to be that, if equity jurisdiction is maintained, a multiplicity of suits will be avoided. Even if it were granted that the numerous suits sought to be avoided by the complainant could possibly bring this case under the doctrine adverted to, the complainant would not, in fact, in the slightest degree avoid the multiplicity of suits which it desires to avoid. It is a rule of the federal equity practice that the chancellor will not, under circumstances such as we have here, undertake to settle disputed titles. Brown v. Cranberry Co., 72 Fed. 96, 103 [18 C. C. A. 444]; Id., 65 Fed. 636, 640 [13 C. C. A. 66]; Adams Eq. (7th Am. Ed.) 377, 378; 2 Daniell's Ch. (4th Am. Ed.) 1072. The bill here clearly shows that the defendants claim title to the land in their possession. Immediately upon the coming in of the answers asserting title in the defendants, the chancellor would be compelled to direct the complainant to bring an action or actions of ejectment against the defendants. If one action were brought, the cases would be tried separately. The consequences would be that the number of suits would not be lessened."

As applicable to the questions relating to a multiplicity of suits, we cite 1 Pom. Eq. Jur. (3d Ed.) § 251; Hale v. Allinson, 188 U. S. 56, 79, 80, 23 Sup. Ct. 244, 47 L. Ed. 380; United States v. Bitter Root Company, 200 U. S. 451, 26 Sup. Ct. 318, 50 L. Ed. 550; Osborne v. Wisconsin Central R. Co. (C. C.) 43 Fed. 824; Tompkins v. Craig (C. C.) 93 Fed. 885; Washington County v. Williams, 111 Fed. 801, 812, 49 C. C. A. 621; Turner v. City of Mobile, 135 Ala. 73, 33 South. 133; Zanhizer v. Hefner, 47 W. Va. 418, 35 S. E. 4.

We conclude that complainant has a plain, adequate, and complete remedy at law, and that he should test the strength of his title by an action of ejectment. If this bill can be maintained in equity, then the right of trial by jury no longer exists, the doors of chancery are open to all who choose to enter, and the way to obviate the inhibition of the statute has been found.

We find no error in the decree appealed from.

Affirmed.