## CAMPBELL v. FARMERS' MFG. CO.

### (District Court, E. D. North Carolina. March 4, 1913.)

### No. 332.

1. QUIETING TITLE (§ 10*)—TITLE OF PLAINTIFF—INVALID EXECUTION SALE.
    A sheriff's deed, conceding its recitals to be prima facie evidence of the facts recited, will not sustain a suit to quiet title, where the judgment on which it is based, as appears from the record thereof, was rendered in an action of attachment, in which the defendant was not personally served and did not appear, and the land was not attached, but the attachment was served on a garnishee, against whom judgment was entered.

    [Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 36–42; Dec. Dig. § 10.*]

2. QUIETING TITLE (§ 12*)—EQUITY JURISDICTION—ADEQUATE REMEDY AT LAW.
    A court of equity is without jurisdiction of a suit to quiet title, where neither complainant nor his grantors ever had possession of the land, and the real purpose of the suit is to determine the title.

    [Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 44, 45; Dec. Dig. § 12.*]

In Equity. Suit by John K. Campbell against the Farmers' Manufacturing Company. Decree for defendant.

Winston & Biggs, of Raleigh, N. C., and Charles Whedbee, of Hertford, N. C., for plaintiff.

E. F. Aydlett, of Elizabeth City, N. C., for defendant.

CONNOR, District Judge. Plaintiff alleges that he is the owner of a certain tract of land lying and being situate in the county of Gates, in the Eastern district of North Carolina, which he describes by metes and bounds. He deraigns his title as follows: (1) A grant

from the state to Kedar Powell, bearing date August 18, 1783. (2) A judgment rendered by the court of pleas and quarter sessions of Gates county, August term, 1789, in the case of Josiah Granberry v. Kedar Powell. (3) Deed from Seth Eason, sheriff of said county, to Thomas Granberry, dated September 4, 1790. (4) Deed from Thomas Granberry to John Campbell, dated June 29, 1796. (5) Descent from John Campbell to plaintiff and his grantors. He alleges that defendant claims title to said land under a deed executed by W. Lynch and wife, dated January 12, 1911, and duly recorded. This deed, plaintiff alleges, is a cloud upon his title, which he asks the court to remove, etc.

Defendant denies that plaintiff has title to the land, and thus presents an issue which must be met and disposed of at the threshold; for, of course, if plaintiff has no title, he has no standing in this court. Plaintiff relies entirely upon a paper title. He does not claim to have shown that he, or any person under whom he claims, has at any time been in the actual possession of the locus in quo. He avers that neither defendant nor its grantees has been in possession. This the defendant denies. It is conceded that the land is swampy woodland, and valuable chiefly for the timber standing upon it.

[1] Plaintiff, for the purpose of showing title, introduces the grant to Powell, which, pro hac vice, may be conceded to cover the locus in quo. He next introduced a certified transcript of the civil docket, No. 2, of the county court of Gates county, May term, 1789, containing the following entry:

"Causes Entered to Gates County Court, May Term, 1789. Josiah Granberry v. Kedar Powell. Attachment Judgt. by default and inquiry."

"Causes for Trial, Gates County Court, August Term, 1790. Josiah Granberry v. Kedar Powell. Attachment. Judgment by default and inquiry. Judgment for the amount in the hands of the garnishee. Stay ex'on three months."

"Executions returnable to Gates County Court, May Term, 1790. Josiah Granberry v. Kedar Powell. Fi Fa.

| | |
|---|---|
| Judgment | £107. |
| Clerk fee | 0.14.9 |
| Sheriff a/c Atto., etc. | 2. 2.8 |

"Satisfied £42.11.06."

Deed from Seth Eason, sheriff of Gates county, to Thomas Granberry, dated April 4, 1790, containing the following recital:

"Witnesseth, that by a certain writ to me directed from the court of Gates county authorizing of me to sell a certain peac or parcel of land the property of Kedar Powell in order to pay his just debts, there being not personal property enough for that purpose, after due notice I, Seth Eason, sheriff, did expose the same to public sale, in order to satisfy the above said Powell's debts. At the day of sale Thomas Granberry appeared and did purchase the said land for the sum of three pounds, twelve shillings current money and was the highest bidder for the same land."

W. T. Cross, clerk of the superior court of Gates county, testified that, as the custodian of the records of the county court of Gates county, he has made a search in his office for the original execution against Kedar Powell; that his search was thorough, made three or four times, through all of the records, where such executions should

have been filed; that he found the dockets referred to, but could find no executions or other original papers in the case. He is asked whether any of the records have been destroyed. He says: "Not so far as I have any personal knowledge." "Is there any reputation of their having been removed?" To which he answers: "Yes." He says that he has not been able to find any executions prior to 1800.

Plaintiff contends that, upon these records and this testimony, the recitals in the sheriff's deed constitute prima facie evidence of his authority to sell and convey the land. In the exhaustive brief of plaintiff's counsel the cases decided by the Supreme Court of North Carolina, upon this question, are carefully collected and reviewed. In Wainwright v. Bobbitt, 127 N. C. 274, 37 S. E. 336, Mr. Justice Montgomery reviews the North Carolina decisions. From an examination of those cases it appears that the court has, after much consideration, reached the following conclusion:

"That the recitals in a sheriff's deed are prima facie evidence of the facts therein stated, and will be sufficient evidence upon which the plaintiff can recover, unless it is rebutted by proof to the contrary."

This language may, in the light of the facts in the several cases cited, be rather broad and subject to some limitation. See 3 Wigmore, Ev. § 1664, notes, citing Rollins v. Henry, 78 N. C. 342. In none of the cases cited and commented upon are the recitals so vague and indefinite as in the deed from Eason, sheriff, to Granberry. If this deed can be sustained by the recitals, it must be because it is an ancient deed, and the evidence of the clerk that, after a thorough search, he has been unable to find the execution issued in the case of Josiah Granberry v. Kedar Powell. His statement that there is a reputation that the records, prior to 1800, have been removed, is not sufficiently definite to sustain a finding that they have been "destroyed by fire or otherwise" to enable plaintiff to have the benefit of the remedial provisions of sections 341, 342, Pell's Revisal. I do not think, however, that this is very material, as there is sufficient evidence that the executions issued from the county court of Gates county are lost. The clerk has made such search as entitles the plaintiff to introduce secondary evidence, especially in view of the antiquity of the deed. Everett v. Newton, 118 N. C. 919, 23 S. E. 961. I am of the opinion that the recitals in the deed constitute prima facie evidence of their truth.

The difficulty, however, consists in the fact that these recitals do not correspond with the record introduced. No execution could lawfully issue upon that judgment, authorizing the sale of the land. It will be observed that the docket entry shows that the suit of Josiah Granberry v. Kedar Powell was begun by attachment. The only step taken at the May term, 1789, was the entry of judgment by default and inquiry. This was followed at the August term, 1789, by a "judgment for the amount in the hands of the garnishee," with a "stay of execution three months." At the August term, 1790, the judgment for £107 is marked satisfied "£42.11.06"—in addition to the cost. At the date of the rendition of this judgment, the attachment law, in force in North Carolina, is found in Acts 1777, c. 2 (Martins' Dig. p.

212) being section 25 of an "Act for establishing courts of law and for regulating the proceedings therein." This statute, brought forward in Rev. Stat. c. 6, provides that:

"Upon complaint being made on oath, etc., that any person hath removed or is removing himself or herself out of the county privately, or so absconds or conceals himself or herself that the ordinary process of law can not be served on such debtor, and if such plaintiff * * * further swears to the amount of his claim * * * it shall be lawful for such justice * * * to grant an attachment against the estate of such debtor, whenever the same may be found, or in the hands of any person or persons indebted to, or having any of the effects of such debtor, etc., which attachment shall be returned to the court where the suit is cognizable and shall be deemed the leading process in such action, and the same proceedings shall be had thereon as on judicial attachments."

The two following sections prescribe that bond shall be taken and that any justice of the county courts may, upon complaint being made as prescribed, issue attachments and make the same returnable to the court where the same is cognizable.

The next section gives like remedy to creditors of any person who shall be an inhabitant of any other government. The next succeeding section prescribes the course and practice to be pursued upon the return of the attachment. When the sheriff or other officer shall serve an attachment in the hands of any person supposed to be indebted to, or supposed to have any of the effects of, the party absconding or residing out of this state, he shall, at the same time, summon such person or persons as a garnishee to appear at the court to which the attachment shall be returnable, then to answer upon oath what he or she is indebted to the defendant, and, when any attachment shall be served in the hands of any garnishee in manner aforesaid, it shall be lawful, upon his appearance and examination, to enter up judgment and award execution against any such garnishee for all sums of money due the defendant, etc. It is further provided that, if the garnishee, summoned in the manner prescribed, fail to appear, it shall be lawful for the court, after solemnly calling the garnishee, to enter a conditional judgment against the garnishee, and to issue a scire facias against such garnishee, returnable to the next term, to show cause why judgment shall not be entered, etc. The next succeeding section extends the remedy by attachment against the lands and tenements of debtors residing in other states and governments, etc. 24 Stat. Rec. 55.

It is apparent that the attachment, to which the docket entry produced by plaintiff refers, was served upon, and judgment entered, "for the amount in the hands of the garnishee." The idea that the attachment was levied upon any lands of the defendant is excluded by the record. The provisions of the statute, we may assume, were complied with, and the judgment against the garnishee "satisfied," as the record shows. No judgment in personam, affecting any other property than that upon which the attachment was levied, could be rendered, there being no personal service on defendant. It may be that Granberry procured another attachment, which was levied upon the lands of his debtor, under which the land in controversy was sold; but of that there is no evidence, nor can there be any presumption because plaintiff claims under this judgment. It will be observed that the amount

for which the judgment against the garnishee was satisfied was much less than the judgment against Kedar Powell. It may be that an execution was run out for the balance, and levied upon the land. This would have been, not only irregular, but without warrant of law. No other land than that upon which the attachment was levied could be sold under any process issuing upon a judgment rendered in that case. The effect of a judgment in an attachment is stated, with his usual clearness, by Mr. Justice Miller in Cooper v. Reynolds, 10 Wall. 308, 19 L. Ed. 931. He says:

"If the defendant appears, the cause becomes mainly a suit in personam, with the added incident that the property attached remains liable, under the control of the court, to answer to any demand which may be established against the defendant by the final judgment of the court. But if there is no appearance of the defendant, and no service of process on him, the case becomes, in its essential nature, a proceeding in rem, the only effect of which is to subject the property attached to the payment of the demand which the court may find to be due to the plaintiff. That such is the nature of this proceeding in this latter class of cases is evidenced by two well-established propositions: First, the judgment of the court, though in form a personal judgment against the defendant, has no effect beyond the property attached in that suit. No general execution can be issued for any balance unpaid after the attached property is exhausted. No suit can be maintained on such a judgment in the same court, or any other proceeding not affecting the attached property."

The question is exhaustively discussed in Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565. The only effect of a judgment in a proceeding begun by an attachment, where there is no personal service, nor appearance by defendant, is to subject the property attached to the payment of the demand which the court may find to be due the plaintiff. 3 Am. & Eng. Enc. 186. As to garnishment proceeding, see 14 Am. & Eng. Enc. 742.

Giving full effect, therefore, to the recitals in the deed, aided by the docket entries, and, accepting as true plaintiff's contention that the sale by the sheriff was made under execution issued on the judgment rendered in the case referred to in the docket entries, the conclusion is irresistible that such sale was not warranted by such judgment and no title passed to the purchaser. This conclusion does not involve any collateral attack upon the judgment, but gives to it the force and effect to which it is entitled. When it was satisfied by payment of the amount in the hands of the garnishee, its force was expended. No other or further process could lawfully issue upon it.

There is another view which I think would be fatal to plaintiff's title. Defendant introduced the record, showing a deed from John Campbell, Sr., to John Campbell, Jr., and Andrew Joyner, dated December 12, 1827. This deed was made upon an express trust to sell the land for the purpose set out. Why did not this deed take the legal title out of John Campbell, Sr., the ancestor of plaintiff? It is true that John, Jr., was also the ancestor of plaintiff; but by the deed he became a tenant in common with Joyner, and this title plaintiff does not claim to own. It will be observed that this deed contains no clause of defeasance; there is no equity of redemption left in the grantor; the direction to sell is unconditional.

[2] While, for the first cause assigned, the bill must be dismissed, it may be well enough to say that the pleadings and evidence here show a case in which plaintiff has a plain, complete, adequate remedy at law, which excludes the equitable jurisdiction of this court. Conceding that plaintiff has the paper title, he, or those under whom he claims, never had any other—were never in possession. Defendant asserts ownership acquired by an ouster by his grantor, followed by seven years' possession under color of title. This is the sole question in controversy, bringing the case clearly within the decision rendered in New Jersey Land & L. Co. v. Gardener-Lacy L. Co. (C. C.) 190 Fed. 861. As was said by Judge Goff, in Buchanan v. Adkins, 175 Fed. 692, 99 C. C. A. 246, the real object of the suit is to obtain by the decree of a chancellor that which, under our jurisprudence, can only be had by a judgment rendered upon the verdict of a jury.

A decree will be drawn dismissing the bill at plaintiff's cost.